RECEIVED
SONY PRO SE OFFIC

SONY PRO SE OFFIC
2021 APR 30 PM 1:51

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSHUA KELLIER,:
                :
     Plaintiff,:
                :
           v. :
                :

BILLUPS      :    Docket No:._____

OMAHONEY      :

ANTHONY ACOSTA :

HYLER      :

MONTANGA  :

JULIUS DOE  :

Mrs.CRUZ    :

JOHN DOE   :

Mr. CLINTON :

CHEUNG    :

MARTIN     :

RODRIGUEZ  :

BENTLY     :

Mr. JACKSON :

DHS FACILITY:

NAICA FACILITY :

COALITION FOR THE HOMELESS:

SAMARITAN VILLAGE:

BILL DE BLASIO:

STEVE BANKS:

Defendants   :
              :

## I. BASIS FOR JURISDICTION

1. This matter is brought under federal question jurisdiction pursuant to 28 U.S.C. § 1331, as case arising under 42 U.S.C. § 1983 for the deprivations of his Federal Constitutional rights to press, right to free speech, right to petition, right to be free from retaliation, right of access, right to be free from unreasonable searches and seizures, right to privacy, right to be free from coercion, right to impartial justice, right to a fair tribunal, right to due

process, equal access, equal protection, right to be free from selective enforcement as guaranteed by the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments and the deprivation of his rights to equal benefits of all laws and proceedings for the security of person and property as set forth under 42 U.S.C. 1981 and his rights to equal access. Plaintiff also brings claims under the civil rights act of 1964 for the deprivation of his right and to be free from discrimination on the basis of race and color as guaranteed by Title VI, 42 U.S.C. § 2000 dd et seq. Plaintiff brings claims under the Americans with Disabilities Act. The District Court has - Supplemental jurisdiction under 28 U.S. Code § 1367. Venue is appropriate under 28 U.S. Code § 1391 (b) as all defendants are residents of the State of New York.

2. Plaintiff brings his claims under state law pursuant Brown v. State of New York 89 N.Y.2d 172, 674 N.E.2d 1129, 52 N.Y.S.2d 223 (1996) based upon deprivations of his rights under the New York State constitution Article 1: ss1 rights, privileges franchises secured violations, ss 7 Compensation for taking of private property, §7 right to discrimination in civil rights prohibited, ss 8 Right to press, Right to speech, ss 9 Right to petition the government for redress of grievances peaceably, ss 9 unjust taking, ss 12 Constitutional securities against unreasonable searches, seizures, NYS constitution ss 11 denial of equal protection of the law (cause of action), ss 12 security against unreasonable searches, seizures. (cause of action)

3. Plaintiff brings claims under New York common law [plaintiff notice of tort claim was filed with the office of the comptroller for skyway men's shelter and being held hostage or sold in his storage unit by mms see index no: 20 cv 10939] for the following causes of action, Breach of contract, Willful Misconduct, Negligence, Breach of Fiduciary duty, and  Detrimental Reliance, Battery Offenses To Plaintiff's Sense Of Personal Dignity. **Plaintiff** also sets forth violations of Consumer rights law, FOIA violations, Administrative Code § 8-107 § 8-101 violations, NY Executive law 296 violations, and Fair Housing Act (42 U.S.C. 3601)18 nycrr 491.17, violation egregious abuse of process social service law 312, 24 CFR 576.403, 24 CFR § 5.703 public health law section 225 part 7, subpart part 7-1,etc.

4. Places of Occurrence: DHS Bronx Park avenue, NAICA Bronx Park, NAICA DHS shelter 61-63 Chrystie st, Skyway men's shelter, samaritan village, 17th precinct, attorney general's office,

5. Dates of Occurrence: January 9, 2020 naica ejection, 2019,October 5,2019, March 16,2019 mrs brown incidentCoercion violation of 135.60 of the criminal Penal law 7am,

April 2, 2019 letter to mrs. freeze, August 29, 2020 email to T Taylor, September 19, 2019 I noticed that my email address was blocked from the ombudsman@dhs.nyc.gov, January 21, 2020 I emailed mr hyler grievances at reception@advocate.nyc.gov after January9,2020 and after filing my notice of tort claim she wanted to comply,etc.

## INJURIES

6. Plaintiff was not allowed to file grievances nor police report, plaintiff was not allowed to have his grievance signed or submit the original grievance only a copy. Plaintiff was not allowed to have services free from coercion or rule or law violations or without criminal activities plaintiff was ejected unlawfully from the dhs facility, no decent place to sleep hazard free, plaintiff was angered, tortured I was continuously told to go back there even after going to 30 th and first after covid started. I wasn't never able to get a meal or three meals a day I was starved. Mr Anthony Acosta and Julius Doe and Mr Cheung and Mrs Hyler and Mrs Hyler Mrs montunga aiding and abbetting one another to negligently to kill me with criminal negligent homicide.ie we're not you case workers go back to the shelter where I caught the foot infection with no vegan options! I was left on the street with my feet peeling and leg swollen hopping on one leg left to carry my clothes and other items into storage. Plaintiff was repeatedly intimidated harassed Sleeping on hard surfaces in adverse weather conditions, "likes, point of "the flu while displaced, loss of enjoyment of life, hospital fees, and unwanted delay in correction, the swelling in my leg, emotional distress, anger, pain. The harm is repairable for it is plaintiff's leg that is swollen, and discolored. Plaintiff's hardship is that he has to spend the night on the train, no shower, no bathroom, no bed, like swollen, can't brush his teeth because he refused to go back there while typing his paperwork, pain and suffering. samaritan village theft of clothes, work clothes, whole foods bag frame after bag up,threats not to bring printer confiscation without giving back,not able to use work clothes for potential electrical job, not able to wear clothes stolen, food wasn't adequate, was allowed to file grievance when I was being ejected,nor police report similar to naica, civil liberties violated hold on my property after I was transferred to wards island while doing job search. Falsely accused me of following a female staff member home after stealing my property to obtain a transfer out of retaliation for filing grievances about vegan diet and theft of property torture violating 42 USC § 2000 dd. I wasn't allowed to respond.

## PARTIES

7. Plaintiff Joshua Kellier mailing address is P.O. BOX 23678, Brooklyn, NY, 11207.

## DEFENDANTS

8.  Defendant Bill de Blasio is a mayor, who at all times acted under color of New York Law. His place of business is located in New York City Hall. He is being sued in his private and public capacity.

9.  Defendant Billups is a police officer at the 17 th precinct, who at all times acted under color of New York Law. His place of business address is 167 E. 51st St., New York, NY 10022. He is being sued in his private and public capacity.

10. Defendant O'Mahony is police officer at the 17 th precinct, who at all times acted under color of New York Law. His place of business address is 167 E. 51st St., New York, NY 10022 . He is being sued in his private and public capacity.

11. Defendant Anthony Acosta (hereinafter referred to as defendant Acosta) is the director at park avenue who at all times acted under color of New York Law. His place of business address is 3339 Bronx park, ny, 10456. He is being sued in his private and public capacity.

12. Defendant Mrs. Hyler is the DHS Ombudsman, who at all times acted under color of New York Law. Her place of business and address is 33 beaver street, New York, Ny 13326. She is being sued in her private and public capacity. The duties and responsibilities of the DHS Ombudsman are:

. formed the Office of the Ombudsman to assist DHS constituent as well as the public, to access a wide array of information and services. The Office is an independent and impartial unit whose mission is to support New York City's homeless population, assist them on their path to fair access to essential resources, improve their quality of life while in shelter, and advocate for a meaningful role in the decision-making processes that affect their Lives.
. The Office is charged with resolving constituent issues and concerns through alternative dispute resolution methods, including mediation services. Experienced Constituent Service's Representatives provide effective conflict resolution, and work to ensure fair and equal access to DSS, City, end community-based services and resources, The staff actively engages constituent and empowers them to participate in positive decision-making processes. With the goal of seeking independent and impartial issue resolution, the Office is responsible for:
Providing information and education on homeless services.
. Providing a supportive client experience through effective and compassionate
. listening and timely client-focused care management
. Providing general assistance and communication facilitation, including service referrals and connections.
. Addressing unresolved grievances or dissatisfied outcomes.

. Evaluating end investigating client grievances.
. Mediation
. Strategic data tracking and recommendations to DHS management

13. Defendant Montanga (hereinafter referred to as defendant Montagna) is the deputy director who at all times acted under color of New York Law. Her place of business address is 33 beaver street or  . She is being sued in her private and public capacity.

14. Defendant Julius Doe is the director at naica Transitional housing 61-63 Chrystie street, New York, NY, 1002 (hereinafter defendant Julius Doe) who at all times acted under color of New York Law. He is being sued in his private and public capacity.

15. Defendants Cruz is the supervisor (hereinafter defendant Cruz) who at all times acted under color of New York Law. His place of business address is 3339 Bronx park, ny, 10456. He is being sued in his private and public capacity.

16. Defendants Steve banks is the supervisor (hereinafter defendant Cruz) who at all times acted under color of New York Law. His place of business address is 3339 Bronx park, ny, 10456. He is being sued in his private and public capacity.

17. Defendant John Doe is NAICA Personnel who took the chair from me (hereinafter defendant John Doe) who at all times acted under color of New York Law. 3339 Bronx park, ny, 10456. He is being sued in his private and public capacity. He is being sued in his private and public capacity.

18. Defendant Cheung (herein after referred to as defendant Cheung) is a police officer at the nypd's 5th precinct who at all times acted under color of New York Law. His place of business address is 19 Elizabeth St., New York, NY,10013.

19. Defendant bald headed guy shift leader (herein after referred to as defendant bald headed guy shift leader), who at all times acted under color of New York Law. His  place of business address is 130-10 S Conduit avenue, Jamaica, NY 11430.

20. Defendant Mrs. Rodriguez (hereinafter referred to as defendant Rodriquez) is a worker at Skyway men's shelter who at all times acted under color of New York Law. Her place of business address is 130-10 S Conduit avenue, Jamaica, NY 11430.

21. Defendant Mr. D. Robinson (hereinafter referred to as defendant Mr. D. Robinson) is a worker at Skyway men's shelter who at all times acted under color of New York Law. His place of business address is 130-10 S Conduit avenue, Jamaica, NY 11430.

22. Defendant Howard Jackson (hereinafter referred to as defendant Jackson) is a security guard at Skyway men's shelter. is a security guard who at all times acted under color of New York Law. His place of business address is 130-10 S Conduit avenue, Jamaica, NY 11430.

23. Defendant Mrs. Jane doe who took my cell phone recklessly and without my consent even after I told her not to touch my shit. (hereinafter referred to as defendant Rodriquez) is a worker at Skyway men's shelter who at all times acted under color of New York Law. Her place of business address is 130-10 S Conduit avenue, Jamaica, NY 11430.

24. Defendant Mr. John Doe who recklessly breached my privacy without my consent and indecently exposed my body parts to himself (hereinafter referred to as defendant Rodriquez) is a worker at Skyway men's shelter who at all times acted under color of New York Law. Her place of business address is 130-10 S Conduit avenue, Jamaica, NY 11430.

25. Defendant Mrs. Brown (hereinafter referred to as defendant Jackson) is a supervisor at Skyway men's shelter. is a security guard who at all times acted under color of New York Law. His place of business address is 225 E. 53rd St., New York, NY, 10022

26. Defendant Mr. Judd (hereinafter referred to as defendant Jackson) is a supervisor at Skyway men's shelter. is a security guard who at all times acted under color of New York Law. His place of business address is 225 E. 53rd St., New York, NY, 10022 he aided and abetted criminally facilitated Mrs brown in deprive me of my property and fraudulently concealed it with false statement "it can't be used as a weapon to be thrown in someone's eyes." The seizure was unreasonable and the bottled vinegar was used for salads the plaintiff received with no toppings nor any other vegan options! This was a deceptive business practice and violated the 24 CFR 576.403(9)& nycrr 491.12( c)(3) which states: (3) "*a resident's civil rights shall not be infringed*;"&(12) "*a resident shall have the right to be free from restraint or confinement and shall not be locked in a room at any time*;" for failing to provide equipment suitable to store foods and the public officers law d."No officer employee of a state agency, member of the legislation or legislative employee should use or tend to use his official position to secure a warranty privileges or exemptions for himself or others." He secure unwarranted exemptions for the himself or others to take my property

27. Mr Clinton security at skyway men's shelter don't get me involved and would give me his name upon request. He at all times acted under the color of law and his place of business is 130-10 S Conduit avenue, Jamaica, NY 11430.

28. Defendant DHS facility is the _____ located at the NAICA park avenue location 30 th and 1st Avenue who tried to send me back to naica after using its drop inservices during covid pandemic. Plaintiff begg staff staff refused and bullied plaintiff back into naica Bronx park by telling he the next morning he could stay at 30th and first and had to report back to naica Bronx park.this again violated the plaintiff right to bedding in a safe hazard

free sanitary environment. Plaintiff used brc drop in the y transfer plaintiff to dhs 30 th and first. Both brc and dhs conspired to violate plaintiff 4th amendment right to be secure in his person. Brc constantly waking the plaintiff up on the trains to come into their drop in center to violate his right as they did that day. The immediately called dhs and refused to put plaintiff into their other drop in center. This is when covid just hit and mandates were made around about that time.this violated 18usc 241 and 42 usc ss 3601.

29. Defendant NAICA facility is the _____ located at theatre online research it shows that the location has been permanently closed 61-63 Chrystie is still open.

11. Defendant Mrs. Hyler is the DHS Ombudsman, her place of business and address is 33 beaver street, New York, Ny 13326. The duties and responsibilities of the DHS Ombudsman are (The Department of Homeless Services:
. formed the Office of the Ombudsman to assist DHS constituent as well as the public, to access a wide array of information and services. The Office is an independent and impartial unit whose mission is to support New York City's homeless population, assist them on their path to fair access to essential resources, improve their quality of life while in shelter, and advocate for a meaningful role in the decision-making processes that affect their Lives.
. The Office is charged with resolving constituent issues and concerns through alternative dispute resolution methods, including mediation services. Experienced Constituent Service's Representatives provide effective conflict resolution, and work to ensure fair and equal access to DSS, City, end community-based services and resources, The staff actively engages constituent and empowers them to participate in positive decision-making processes. With the goal of seeking independent and impartial issue resolution, the Office is responsible for:
Providing information and education on homeless services.
. Providing a supportive client experience through effective and compassionate
. listening and timely client-focused care management
. Providing general assistance and communication facilitation, including service referrals and connections.          . Addressing unresolved grievances or dissatisfied outcomes.
. Evaluating end investigating client grievances.
. Mediation
. Strategic data tracking and recommendations to DHS management

5. Defendant Montunga is the DHS Deputy director, her place of business and address is 33 beaver street, New York, Ny 13326. The duties and responsibilities of the DHS Deputy director are she works for the Department of Homeless services.

6. Defendant Anthony Acosta IIis place of business and address is 3339 park avenue, Bronx, Ny, 10455. The duties and responsibilities of the DHS program director arc He works for NAICA.

7. Defendant John Doe of the NAICA Security personnel his place of business and address is NAICA Brom park transitional housing program, 3339 park avenue Bronx Ny, 10456. The duties and responsibilities of the DES program director are He works for the Serra Security, atNAICA.

E. Defendart Julius Doe his place of business and address is 6163 Chrystie street, New York, Ny, lflX)2. The duties and responsibilities of the DHS program director are he works for NAICA-

Defendant police officer Cheung his place of business and address is the 5h precinct 19 Elizabeth St, New York NY1113. The duties and responsibilities of the NYPD police officer is to impartially enforce the law, protect and serve.Plaintiff was told by the security at 33 Beaver St. after Covid began after he filed his complaint that DHS move to E. 16th St. It went to E. 16th St. and found that DHS was not there. After doing online research plan to phone DHS has another address at 604 East 112 street., Brooklyn New York.

## WITNESSES

30. Doctor Elizabeth Auld, MD, her place of business and address is Bellevue Hospital' 426 lst.avenue, AMB CARE 4A New York, Ny, 10016 this the doctor who diagnosed me not Lisa.

31. David Cuban a resident from the third floor of the NAICA facility, was present during the incident.

32. T. Taylor from the coalition for the homeless. I emailed him my emails that I sent to Mrs Freeze in form of a complaint. I got no reply from dhs the same way I got no reply from him afterwards.

## STATEMENT OF THE CLAIM

33. Plaintiff contends that DHS has discriminated against him and violated his rights under the Fair Housing Act. Plaintiff has lived his life restricted and because he wasn't able to eat. consequently, his right to liberty was violated, not having an option to eat vegan food is not "freedom". As stated in the Callahan case law, the state is required to provide housing for the needy and is the landmark case that established the duty of New York State to provide shelter for homeless men. The landmark victory in the 1979 lawsuit

Callahan v. Carey paved the way for further legal victories that ensured the right to shelter for homeless men, women, children, and families in New York City.

34. Article XVII of the New York State Constitution, which declares that "the aid, care, and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions...." Defendant Robert Callahan DHS discharging the plaintiff on the streets of Manhattan not too far from the bowery location and coercing the plaintiff to go back to the defendant DHS, N Bronx park transitional housing set the plaintiff ups for a similar if not congruent death bed.

35. Like the false statements and denials of plaintiff's motions and attacks from defendant Alison and defendant Mc Mahon and orders and order to dismiss while in a covid pandemic and other exhibit shown the court has set the plaintiff up biased and set the plaintiff up for similar if not congruent faiths of Robert Callahan. This is not the first time the defendant DHS has failed intentionally to comply with the Callahan consent decree via bedding and not having adequate housing as stated in article 25 of the plaintiff's universal rights!

36. In addition, the U.S. Supreme Court has identified fundamental rights not explicitly stated. The very fact that the Callahan v Carey case is the binding authority and its opinion rendered stipulated that homeless men and women have a right to shelter. Not allowing a resident to be transferred to where they are safe, free from reinfection and hazardous conditions violated the resident right to shelter and OSHA law! considering defendant DHS denied reasonable request to be transferred to someplace free from those hazards.

37. Defendant DHS was viciously negligent towards the homeless in the past and closed shelters as a case commenced against them, in like manner, they are as vicious to the plaintiff to move their location upon the commencement of the plaintiff's action. The moving of the headquarters location has the same effect on a homeless client as closing the shelters had in the past on homeless litigants such as defendant Callahan. The defendant DHS move to close off their shelter's when Callahan filed his lawsuit lead to countless deaths to homeless men and women in the year 1938!

38. Likewise, the defendant DHS has left the plaintiff to die after he refused to go back to a shelter in which he contracted cellulitis! Cellulitis is a life-threatening infection. The plaintiff's refusal to go back to the shelter which he contracted cellulitis does not deny

him his right to shelter! Like the homeless men and women of 1983, the plaintiff was left to experience winter of 2020, without the available option to him to go to another shelter as tony told the plaintiff we think it better for you here and that there was no other option to go to another shelter after he told the plaintiff to let me see if the was another option but never looked into it.

39. Then denied the plaintiff. The plaintiff contends that such statements are not providing care and support for a need to recover from a life-threatening infection! "In 2006 the City initiated legal action to stop providing shelter termination notices to the Coalition and the Legal Aid Society. After three years of litigation and appeals, in 2009 the New York State Court of Appeals found for plaintiffs and the Coalition and ordered the City and State to continue providing copies of termination notices."

40. Explain that if the appellate court can order the state and the city accountable for on organization's actions, such actions to stop giving termination letters to shelter residences is a state action! This showing how the administration of justice has already verified that such an organization as the defendant DHS are state actors by ordering the city and the state. The very case brought before the judge and having a continued into trial and a decision made which is the binding authority is enough to show that DHS are state actors.

41. The very reason the fact that the plaintiff has provided the court a copy of the contract provided should raise substantial concern for the administration of justice to direct its attention to the claims of the plaintiff's complaint against the tortfeasor stating over 99 fact and constitutional violations and rule violation as stated below! " I have a first amendment right to record defendant Delroy told me not I couldn't record him.

## 42. FRAUDULENT CONCEALMENT

43. Plaintiff was kicked out the night he tried to father please report with the 17th precinct. Plaintiff went back to the 17th precinct to get the complaint number a couple of days later and was told that there was no report filed. Thus, violating the plaintiffs New York state

constitutional ss 8, and 1st amendment constitutional right to press and petition the government for a redress of grievances and NYS constitution ss 9 "right " to assemble and petition.

44. After plaintiff stated I got documentation I wanted to submit to you, and you're not allowing me to do that Mrs. Montunga falsely Stated "we don't take your documentation."

45. After explaining to Mrs. Montunga that it was a conflict of interest to speak with Mr. acosta for falsely reporting incident and harassing and tampering with a witness civil rights violations and civil liberties violations) she states can I talk something, the only thing we gonna do today is one.. we're going to send your case to the program administrator in the analogue they're going to arrange to meet with you because their supervisor also that we're going to be able to do so.

46. Defendant Anthony Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, defendant Julius stated that the victim was "trespassing" when police officer Cheung first arrived. Defendant Julius doe made false statements to defraud plaintiff and the police officer. The defendant police officer Cheung didn't allow me to file a criminal complaint report against the individual who called the police on the plaintiff in violation the 14th amendment right to equal protection of the law, impartial government, and due process.

47. On January 10, 2020, the plaintiff went to the defendant DHS facility but was told by defendant Montagna to speak with a caseworker to be transferred by the deputy director. The administration has handed over its right to assess issues of the perpetrator, therefore, denying the plaintiff his right to be treated fairly. As stated in Article 4 of the DHS Policy client's rights: "A resident shall have the right to receive courteous, fair, and respectful care and treatment. A resident has shall be permitted to leave and return to the facility and grounds at reasonable hours. As a resident and the victim has plaintiff attempted to seek relief.

**FRAUDULENT INDUCEMENT**

48. Plaintiff has suffered a swollen leg as a result of the defendant's conduct, for the second time. Defendant Anthony Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, defendant Julius falsely stated that the plaintiff was "trespassing" when defendant Cheung (police officer) first arrived. The defendant police officer Cheung didn't allow me to file a criminal complaint report against the individual who called the police in violation the14th amendment right to equal protection of the law, Press.

49. On January 10, 2020, the plaintiff went to the defendant DHS facility but was instructed by defendant Montagna to speak with a caseworker to be transferred by the defendant deputy director. The administration has handed over its right to assess issues of the perpetrator, therefore, denying the plaintiff his right to be treated fairly. As stated in Article 4 of the DHS Policy client's rights and nycrr 491.12( c): *"A resident shall have the right to receive courteous, fair, and respectful care and treatment.* A resident has shall be permitted to leave and return to the facility and grounds at reasonable hours. As a resident and the victim has plaintiff attempted to seek relief."

50. Plaintiff has suffered a swollen leg as a result of the defendant's conduct, for the second time. Plaintiff was kicked out the night he tried to file a police report with the 17th precinct. Plaintiff went back to the 17th precinct to get the complaint number a couple of days later and there was told that there was no report filed. Thus, violating the plaintiffs New York state constitutional ss 8, and 1st amendment constitutional right to press and petition the government for a redress of grievances and NYS constitution ss 9 "right " to assemble and petition.

51. On January 10, 2020, defendant Montunga stated: "You come to our office several times; you're not coming upstairs today."

52. On January 10, 2020, Plaintiff was sent back to the defendant DHS Bronx Park avenue transitional housing location at 3339 Park Avenue location because defendant Anthony Acosta  stated: "because you were late." David Cuban a resident from the third floor of the NAICA facility was present during the incident and he entered the building at the same time as the plaintiff but was allowed to go upstairs. The defendant NAICA Security Guard's questioned defendant Julius, about David Cuban. Defendant Julius answered: "Oh he good. Defendant Naica staff and defendant Anthony Acosta conspired to deprive the victim of a bed on January 9, 2020. Defendant Anthony stated to the victim during the telephone conversation "you would not be bedded over there."

53. Defendant Anthony Acosta stated: "you would not be a bedded over there" in direct violation of the defendant DHS policy and nycrr 491.12( c ). Defendant Anthony Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, defendant Julius stated that was "trespassing" when police officer Cheung first arrived. Defendant Cheung didn't allow the plaintiff to file a crime report and complaint against whoever called the cops on the plaintiff violating the 14th amendment right to equal protection of the law.

54. Plaintiff appeared there in the past when his leg was swollen for the first time, the defendant's case worker Mrs Jane doe didn't transfer him, instead, defendant Hyler instructed: "you have to ask your caseworker which I never had to transfer me" on my second transfer to Bronx parkThis is not the first incident where the plaintiff was deprived of his right to speak to the ombudsman. Plaintiff was denied in the past to speak to the defendant Freeze in person as well as unanswered emails, on more than one occasion.[see exhibits S emails.] Thus, violating the plaintiff's right to press. Defendant Anthony Acosta conspired with defendant Julius Doe to call the police and misrepresent facts against the plaintiff, out of retaliation, Julius stated that the victim was "trespassing" when police officer Cheung first arrived. The defendant Cheung didn't allow the plaintiff to file a criminal complaint report against whomever called the cops on me that's violating the 14th amendment right to equal protection of the law.

55. On the night of January 9, 2020, the plaintiff arrived in the 17th police precinct to report a crime. Plaintiff was kicked out the night he tried to file a police report with the 17th precinct. Plaintiff went back to the 17th precinct to get the complaint number a couple of days later and was told that there was no report filed. Thus, violating the plaintiffs New York state constitutional right ss 8, and 1st amendment U.S. constitutional right to press and petition the government for a redress of grievances and NYS constitution ss 9 "right " to assemble and petition. Plaintiff has come there in the past when his leg was swollen for the first time, they didn't transfer the plaintiff but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where the plaintiff was deprived of his right to speak to the ombudsman.

56. Plaintiff was denied in the past to speak to the defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating my right to press. In retaliating against the plaintiff's exercise of his right to petition, the defendant Montanga hung up the phone on the plaintiff thus violating the first amendment right to speech and to petition for redress. Defendant Montunga stated the same words the next day "have a nice day" as defendant Tony did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving plaintiff to believe that defendant Acosta Tony( the director at park avenue), defendant Hyler (the ombudsman), defendant Montunga (the deputy director) and defendant Julius (the director at Chrystie street) and staffing all conspired to deprive plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in his property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. Furthermore, Julius stated it was a code 51, which was an administrative transfer, Then later stated you been transferred because you were late today. Julius denied me at first to refuse transfers then stated that code 51 was not a transfer. The workers

Julius and Tony both threaten to call the police after exercising my right. Julius stated: " If you refuse, I will have to call PD (short for NYPD)."

57. Defendant Tony stated: " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendant Montunga called to speak to the plaintiff. Plaintiff replied to Defendant Montunga that he wasn't coming upstairs.

58. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter (defendant "NAICA") so that they can have you transferred. Plaintiff went back to the shelter (defendant "NAICA"). Plaintiff Spoke to the Case Manager, defendant Jane Doe. Plaintiff filed grievances. [Exhibits_____].

59. On January 10, 2020 defendant Montanga stated "we are not your case managers". We are not your case managers and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. defendant Montagna stated that I  Hyler stated that I once. Plaintiff clarified and I stated that I'm asking to speak to the ombudsman I didn't ask to speak to you I asked to speak to her (defendant Hyler) she states disrespectfully that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her.

60. The defendants Montunga and defendant Hyler violated the plaintiff's First Amendment Right to Speech and Petition. Defendant Montunga openly discriminated when she stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. The time plaintiff spent writing and putting together his complaints and grievance to bring light and stop the tortfeasors stopped at the time and slowed down his employment search.

61. On July 10, 2020, defendant Hyler and defendant Montunga stated "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff of his right to speak to the ombudsman. The plaintiff's stayed at the defendant NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location. During his stay, the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay.

62. Plaintiff was told to speak to them on Thursday because the day he asked was New Year's day and was told that everyone will be back on Thursday. Thursday came only one caseworker was present, and he told the plaintiff the director has to schedule the decision and appoint the plaintiff a caseworker. Defendant Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, defendant Julius stated that the plaintiff was "trespassing" when police officer Cheung first arrived.

## RULE 3. RIGHT TO MEET AND HAVE WRITTEN COMMUNICATIONS
## 63. WITH YOUR LEGAL REPRESENTATIVE IN PRIVATE VIOLATIONS

64. Defendant Montunga called to speak to the plaintiff,

65. Plaintiff stated to Defendant Montunga that he wasn't coming upstairs.

66. Defendant Bentley states I can't find it (referencing the grievance) in the computer system. I can't find it in the room.

67. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the defendant Jane Doe (Case Manager. Plaintiff filed grievances. [Exhibit_____]

68. On January 10, 2020, defendant Montunga stated "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers.

69. Defendant Montunga stated that I  Hyler stated that I once

70. Plaintiff clarified that he was asking to speak to the ombudsman and that he didn't ask to speak to defendant Montunga. Plaintiff asked to speak to defendant Hyler, defendant Montunga disrespectfully replied: "ok she, not your case manager." Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager. Defendants Montunga and the defendant Hyler violated the plaintiff's First Amendment Right to Speech and Petition.

71. Defendants Montunga openly discriminated against the plaintiff when he stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. The time plaintiff spent writing and putting together his complaints and grievance to bring light and stop the tortfeasors stopped at the time and slowed down his employment search.

72. The DHS Ombudsman defendant Hyler and defendant Montunga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff of his right to speak to the ombudsman. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Plaintiff was instructed to speak to them on Thursday because the day of his request was New Year's day and was told that everyone will be back on Thursday.

73. On that Thursday, only one caseworker was present, and he told the plaintiff the director had to schedule the decision and appoint the plaintiff a caseworker. Plaintiff wanted to submit his medical record evidence to the ombudsman but was deprived of his right to do so.

## RULE 4. RIGHT TO RECEIVE COURTEOUS FAIR AND RESPECTFUL TREATMENT VIOLATIONS

74. Defendant Julius and Tony both threaten to call the police after exercising my right. Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Tony "We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!". Defendant Montagna called to speak to the plaintiff. Plaintiff stated to Defendant Montage that he wasn't coming upstairs.

75. After plaintiff asserts I'm not going to sit here and keep going back-and-forth with you, Mrs. Montunga the states offensively Mr. Kelly.

76. After plaintiff stated again I am requesting to be transferred and Mrs. Montunga State we're gonna call the shelter now, we're going to call you back ignoring the plaintiffs request again.

77. Mr. Anthony acosta during the phone conversation stated: I don't think you're going to be satisfied, but I'm going to do my best to um Explain these things to you objection: what he says, The policy says does not supersede the plaintiff's constitution rights.Mr. Anthony acosta during the phone conversation stated: I'm not going to be able to fix a lot of these things because you know you been already aggrieved.Mr. Anthony acosta during the phone conversation stated: The only thing I can do here is explain why something is the way that it is, or um say right That should not have happened um And I will change that.Mr. Anthony Acosta during the phone conversation stated: At least she will never be able to say well nobody Explain any of this to me

78. I have the plaintiff stating he's reporting them stating that he's requesting a transfer stating you guys are not doing Your job, and caring out your dutiesMrs. Montunga stated the reason why you're being transferred is because you missed your curfew last night. False David Cuban was allowed to go up stairs and was not working nor did he have a late pass. Julius doe stating he good he good.This violated the fair housing act as Mrs. Montunga stated: "they were going to put you into a smaller facility" because plaintiff was disabled and misrepresented facts to mislead the plaintiff to get him to go to another area. Putting plaintiff in another are for his disability and because he is black in a white neighborhood violates The fair housing act prohibits discrimination on the basis of race and disability.

79. On or about October 29, 2019, defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to defendant Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated "we are not your case managers, we are not your cam" and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers.

80. After the plaintiff states year, I'm downstairs am i going to speak to somebody?Mrs. montunga states we don't have any decision-making, Mrs. Montunga State we're going to call you and tell you the decision. "The Office is an independent and impartial unit whose mission is to support New York City's homeless population, assist them on their path to fair access to essential resources, improve their quality of life while in shelter, and advocate for a meaningful role in the decision-making processes that affect their Lives." This directly violates the duty of the office of the ombudsman and Mrs hyler & mr Montunga failed to act fairly and failed to perform her duty to make .

81. Defendant Montunga stated that I  Hyler stated that I once plaintiff clarified and I stated that I'm asking to speak to the ombudsman I didn't ask to speak to you I asked to speak to her (defendant Hyler) she stated disrespectfully "that's ok, she, not your case manager." Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. Plaintiff has come there in the past when his leg was swollen for the first time, they didn't transfer him but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where plaintiff was deprived of his right to speak to the ombudsman. Plaintiff was denied in the past to speak to the defendant Freeze (ombudsman) in person as well as unanswered emails, on more than one occasion. Thus, violating plaintiff's right to press.

82. Immediately after plaintiff asking Mrs Montunga the third time requested to be transferred and Mrs. Montunga good answers "have a nice day" and hangs up the phone. This was not being courteous nor fair and violated the rules. Mrs montunga practice pattern acts of discrimination and disrespect to participate in advancing the

affairs of the criminal enterprise to deprive the plaintiff of anything he wanted and right to be transferred violating 18usc 242.

83. After explaining to Mrs. Montunga that it was a conflict of interest to speak with Mr. acosta for falsely reporting incident and harassing and tampering with a witness civil rights violations and civil liberties violations) she states can I talk something, the only thing we gonna do today is one.. we're going to send your case to the program administrator in the analogue they're going to arrange to meet with you because their supervisor also that we're going to be able to do so.

84. The defendant Montunga (deputy director) hung up the phone on plaintiff thus violating the first amendment right to speech and to petition for redress (retaliation). Defendant Montanga stated the same words the next day as defendant Tony did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving me to believe that defendant Acosta Tony ( director at park avenue), defendant Hyler (the ombudsman), defendant Montunga (the deputy director) and Julius (the director at Chrystie street) and staffing all conspired to deprived plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in his property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. Furthermore, defendant Julius stated it was a code 51, then later stated it was an administrative transfer. Defendant Julius denied plaintiff at first to refuse to state that code 51 was not a transfer.

## 5. RIGHT TO REMAIN IN SHELTER, AND NOT TO BE INVOLUNTARY TRANSFER OR DISCHARGE EXCEPT IN ACCORDANCE WITH STATE REGULATIONS, AND DHS PROCEDURES IMPLEMENTING THOSE REGULATIONS VIOLATIONS.

85. Defendants Anthony  Costa and Julie's doe denied Plaintiff bedding in the defendant NAICA comfort INN hotel which is a violation of [ss1] of the New York State Constitution and DHS Policy Article XVIII Housing §1. Housing and nursing home accommodations for persons of low income; slum clearance.  Article XVII, §1 of the State Constitution, requires that the State provide "for the aid, care and support of the needy in such manner and by such means, as the legislature may from time to time determine" see Callahan v. Carey.

86. The defendant NAICA staff, and defendant Acosta conspired to deprive the victim of a bed on January 9, 2020. Defendant Anthony stated to the victim during the telephone conversation "you would not be bedded over there." Defendant Anthony Acosta stated: "you would not be a bedded over there" in direct violation of DHS policy. On January 10, 2020 defendant Montunga January "You come to our office several times; you're not coming upstairs today." Defendant Montunga openly discriminated against the plaintiff when he stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman Defendant Montunga stated, " were not case managers", "ok she, not your cam did not case manager defendant Montagna called to speak to plaintiff, Plaintiff stated to defendant Montunga that he wasn't coming upstairs. This violated 24 CFR ss 576.403 (3) states:" Space and security. Except where the shelter is intended for day use only, the shelter must provide each program participant in the shelter with an acceptable place to sleep and adequate space and security for themselves and their belongings."Skyway men's shelter Mrs. Rodriguez and Mr Bentley and Mr Jackson violated plaintiff right to be provided with an acceptable place to sleep and adequate space and security for his belongings. This violated 24 CFR ss 576.403 (3) i.e. conspired to  transfer plaintiff to another dhs preparatory that stole from him, it states except where the shelter...

87. On or about October 29, 2019 defendant Hyler stated: "to go back to the shelter defendant "NAICA" so that they can have you transferred. Plaintiff went back to the shelter defendant "NAICA". Plaintiff Spoke to defendant Jane Doe, Plaintiff filed grievances.

88. On January 10, 2020, defendant Montunga stated, "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. Plaintiff clarified and stated that he was asking to speak to the ombudsman and didn't ask to speak to you, plaintiff asked to speak to defendant Hyler she states disrespectfully that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to defendant Montunga.

89. The defendant Hyler and defendant Montunga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." Plaintiff has come there in the past when his leg was swollen for the first time, they didn't transfer him but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where the plaintiff was deprived of his right to speak to the ombudsman.

90. Plaintiff was denied in the past to speak to defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating my right to press. The defendant Montunga hung up the phone on me thus violating the first amendment right to speech and to petition for redress. Defendant Montunga stated the same words the next day as defendant Tony did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving me to believe that defendant Acosta, defendant Hyler, defendant Montunga (the deputy director) and defendant Julius and staffing all conspired to deprive me of my right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. Furthermore, defendant Julius stated it was a code 51, then later stated it was an administrative transfer.

91. Defendant Julius denied me at first to refuse to state that code 51 was not a transfer. The defendants Montunga and the defendant Hyler violated my First Amendment Right to Speech and Petition. David Cuban a resident from the third floor of the defendant NAICA facility was present during the incident and he entered the building at the same time as the plaintiff did but was allowed to go upstairs. The defendant NAICA Security Guard's question Julius, about David Cuban. The defendant NAICA staff, and defendant Acosta conspired to deprive the plaintiff of a bed on January 9, 2020. Defendant Anthony stated to the plaintiff during the telephone conversation "you would not be bedded over there." Plaintiff's thirteenth and fourteenth amendment equal protection rights were violated by defendant Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us and ah we felt it was best that you're better accommodated over here."

92. Despite the plaintiff's request and refusal of transfer and corresponding grievances, and doctors' discharge papers. Defendant Acosta stated:  " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendant Acosta misrepresented to the plaintiff the purpose and intent of inquiries he made as to my unemployment. Defendant Acosta refused to answer my questions. Defendant Acosta hung up on the plaintiff. Defendant Acosta told the plaintiff to have a good day. Defendant Acosta stated to the plaintiff "I have nothing further to discuss with you" Defendant Acosta threateningly stated "you and I can personally discuss your issues."

## a.  RULE 6. RIGHT TO PRESENT GRIEVANCES ON BEHALF OF YOURSELF AND OTHER RESIDENTS IN YOUR SHELTER WITHOUT

## FEAR OF RETALIATION AND TO RECEIVE A TIMELY RESPONSE,VIOLATIONS

93. Defendant Montunga called to speak to the plaintiff. Defendant Montage stated to the plaintiff that he wasn't coming upstairs. On or about October 29, 2019, defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the defendant Jane Doe, Plaintiff filed grievances.

94. On January 10, 2020, defendant Montunga stated "we are not your case managers, we are not your cam "and referred to defendant Hyler suggesting that plaintiff go to the shelter. Only the shelter has caseworkers. Defendant Montunga stated that defendant Hyler stated that I once the plaintiff clarified that he was asking to speak to the ombudsman , that he didn't ask to speak to defendant Montunga, he asked to speak to defendant Hyler, she disrespectfully stated "that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her.

## RULE 8. RIGHT TO LEAVE AND RETURN TO THE SHELTER IN ACCORDANCE WITH POSTED CURFEW VIOLATIONS

95. Plaintiff's thirteenth and fourteenth amendment rights were violated by defendant Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah, we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. Defendant Julius and defendant Anthony both threaten to call the police after exercising my right. Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Anthony " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called.

96. After explaining to Mrs. Montunga that it was a conflict of interest to speak with Mr. acosta for falsely reporting incident and harassing and tampering with a witness civil rights violations and civil liberties violations) she states can I talk something, the only thing we gonna do today is one.. we're going to send your case to the program administrator in the analogue they're going to arrange to meet with you because their supervisor also that we're going to be able to do so.

97. A refusal is not a transfer nor a means to coerce!" Defendants Acosta and defendant Doe deprived me of the right to not be coerced. Defendants Acosta coerced the Plaintiff back into the same facility that violated his constitutional and statutory rights and broke his laptop i.e. damaged his property without due process of law. Plaintiff was transferred after a New Years' day from the defendant NAICA Bronx park location to 61-63 location, but after submitting his documents [see Exhibits C] showing that the plaintiff needed to put up in a bed from the hospital. The defendants Mrs. Cruz and security John Doe began implementing a custom prohibiting plaintiff from sleeping on more than one chair. When the plaintiff would attempt to go use the bathroom the defendants Cruz and John Doe would take the chair away. When the plaintiff had come back, he noticed that the chair was gone. The plaintiff would beg the security guard for an extra chair to put his leg up after back and forth about the discharge papers.

98. The plaintiff explained to the defendants Mrs. Cruz that he just came from the hospital, and the pain that he felt was unbearable in his leg to the point that he had to hop. The plaintiff begged them for a transfer. Defendant Cruz worked towards the transfer after he repeatedly asked to be transferred before the bus driver left. After leaving the defendant DHS facility at the NAICA park avenue location, the leg swelling, and swelling went away at 61-63 chytids st he was coerced to leave the facility with threats of and the actual use of police force, out of retaliation for the exercise of his right to free speech, to deprive the plaintiff of a doctor recommendation, out of retaliation of his right to refuse a transfer. Defendants Acosta, Julius, Hyler, and Montunga all worked together in breaking the law to keep the plaintiff at the defendant DHS facility at park avenue against the plaintiff's will violating his 14 amendment right to *"liberty." Defendant Acosta stated: "ah well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here."* The same location where the plaintiff contracted a leg infection.

## RULE 9. A RESIDENT SHALL HAVE THE RIGHT TO PRIVATE, WRITTEN, AND VERBAL COMMUNICATIONS VIOLATIONS

99. Plaintiff has come there in the past when my leg was swollen for the first time, they didn't transfer me but instead, defendant Hyler told me: *"you have to ask your caseworker which I never had to transfer me."* This is not the first incident where plaintiff was deprived of my right to speak to the ombudsman. Plaintiff was denied in the past to speak to defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating my right to press. Defendant Montunga hung up the phone on me thus violating the first amendment right to speech and to petition for redress. Defendant Montunga stated the same words the next day as defendant Anthony did the night before in the phone conversation "you have a good day ok, you have a good day

good day sir" thus leaving plaintiff to believe that defendant Acosta, defendant Hyler, defendant Montunga and defendant Julius and staffing all conspired to deprive plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location.

100.    At the plaintiff states year, I'm downstairs am i going to speak to somebody?Mrs. montunga states we don't have any decision-making, Mrs. montunga State we're going to call you and tell you the decision.

101.    Immediately after plaintiff asking Mrs Montunga the third time requested to be transferred and Mrs. Montunga good answers "have a nice day" and hangs up the phone. This was not being courteous nor fair and violated the rules. Mrs montunga practice pattern acts of discrimination and disrespect to participate in advancing the affairs of the criminal enterprise to deprive the plaintiff of anything he wanted and right to be transferred violating 18usc 242.

**102.**    Furthermore, defendant Julius stated it was a code 51, then later stated it was an administrative transfer. Defendant Julius at first refused to state that code 51 was not a transfer. Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the contracted a leg infection. The defendant Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied, yeah. The defendant Anthony Acosta stated: "Thank you for letting me know that, so I could correct that" in a threatening manner. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Defendant Montunga called to speak to the plaintiff.

103.    Plaintiff stated to Defendant Montunga that he wasn't coming upstairs On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the Case Manager Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated, "we are not your case managers" We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. Defendant Montagna stated, once plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to defendant Montagna, and that he asked to speak to defendant Hyler. Defendant Montagna disrespectfully replied "that ok she, not your case manager." Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her.

104.   The defendant Julius and Acosta both threatened to call the police after plaintiff exercised his rights. Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Acosta stated" We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" The defendant Hyler and defendant Montanga on July 10, 2020, stated, "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff, of his right to speak to the ombudsman. Plaintiff complained about the night before this event. Plaintiff asked defendant Julius for a grievance and wasn't allowed to get a grievance, because defendant Julius called police on the plaintiff instead. Defendant Julius made statements "he has to go" to security personnel and other staff. Defendant Julius violated the plaintiff's fourteenth amendment right, and New York State constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out.

105.   Plaintiff has come there in the past when my leg was swollen for the first time, they didn't transfer me but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where plaintiff was deprived of his right to speak to the ombudsman. Plaintiff was denied in the past to speak to the defendant  Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating his right to press. The defendant Montunga hung up the phone on plaintiff thus violating the first amendment right to speech and to petition for redress (retaliation). Defendant Montunga stated the same words the next day as defendant Acosta did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving plaintiff to believe that defendant Acosta, defendant Hyler, defendant Montunga and defendant Julius and staffing all conspired to deprive plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in his property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location.

## RULE 10.RIGHT TO PRESENT GRIEVANCES WITHOUT FEAR OF REPRISAL VIOLATIONS

106.   Defendant Mr. Anthony acosta during the phone conversation stated: I don't think you're going to be satisfied, but I'm going to do my best to um Explain these things to you objection: what he says, The policy says does not supersede the plaintiff's constitution rights.Mr. Anthony acosta during the phone conversation stated: I'm not going to be able to fix a lot of these things because you know you been already aggrieved.Mr. Anthony acosta during the phone conversation stated: The only thing I can do here is explain why something is the way that it is, or um say right That should not

have happened um And I will change that.Mr. Anthony Acosta during the phone conversation stated: At least she will never be able to say well nobody Explain any of this to me.

107.    After plaintiff stated I got documentation I wanted to submit to you, and you're not allowing me to do that Mrs. Montana State "we don't take your documentation."

108.    Defendant Bentley states I can't find it (referencing the grievance) in the computer system. I can't find it in the room.

109.    Plaintiff has come there in the past when his leg was swollen, the defendants case worker Mrs Jane doe didn't transfer him but instead, defendant Hyler told plaintiff: "you have to ask your caseworker which never had to transfer me." This is not the first incident where the plaintiff was deprived of his right to speak to the ombudsman. Plaintiff was denied in the past to speak to defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating his right to press. The defendant Montunga hung up the phone on the plaintiff thus violating his first amendment right to speech and to petition for redress (retaliation).

110.    After plaintiff states he is writing the mayor in regards to this behavior, Mrs. Montunga stated OK no problem.

111.    You have to plaintiff stating I am also notify you it's your duty to rectify the situation Mrs. montunga States we don't have any decision making.the dhs website stated "The Office is an independent and impartial unit whose mission is to support New York City's homeless population, assist them on their path to fair access to essential resources, improve their quality of life while in shelter, and advocate for a meaningful role in the decision-making processes that affect their Lives." This directly violates the duty of the office of the ombudsman and Mrs hyler & mr Montunga failed to act fairly and failed to perform her duty to make .

112.    At the plaintiff states year, I'm downstairs am i going to speak to somebody?Mrs. montunga states we don't have any decision-making, Mrs. montunga State we're going to call you and tell you the decision.the dhs website states: "The Office is an independent and impartial unit whose mission is to support New York City's homeless population, assist them on their path to fair access to essential resources, improve their quality of life while in shelter, and advocate for a meaningful role in the decision-making processes that affect their Lives." This directly violates the duty of the office of the ombudsman and Mrs hyler & mr Montunga failed to act fairly and failed to perform her duty to make .

113.    Defendant Montunga stated the same words the next day as defendant Acosta did the night before in the phone conversation "you have a good day ok". Defendant Acosta stated "you have a good day good day sir" thus leaving me to believe that defendant

Acosta ( the director at park avenue), defendant Hyler, defendant Montanga, and defendant Julius and staffing all conspired to deprive the plaintiff of the right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. Furthermore, defendant Julius stated it was a code 51, then later stated it was an administrative transfer. Defendant Julius denied the plaintiff at first to refuse to state that code 51 was not a transfer. Defendant Montagna called to speak to the plaintiff, Plaintiff stated to Defendant Montage that he wasn't coming upstairs.

114.    After explaining to Mrs. Montunga that it was a conflict of interest to speak with Mr. acosta for falsely reporting incident and harassing and tampering with a witness civil rights violations and civil liberties violations) she states can I talk something, the only thing we gonna do today is one.. we're going to send your case to the program administrator in the analogue they're going to arrange to meet with you because their supervisor also that we're going to be able to do so.

115.    On or about October 29, 2019, defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the defendant Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated "we are not your case managers" We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to defendant Montagna, he asked to speak to defendant Hyler. Defendant Montagna disrespectfully stated, "that's ok, she, not your case manager". Insinuating that plaintiff asked to speak to a case manager.

116.    Plaintiff never mentioned anything about a case manager at the beginning of the conversation. Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here", the where the plaintiff suspected to give me a leg infection. The defendant Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied, yeah. The defendant Acosta stated: "Thank you for letting me know that, so I could correct that." In a threatening manner. This violated plaintiff right to be secure in his effects and affected his right to petition the government i.e. writing his lawsuit, and breaking his laptop this violated plaintiff's 13th amendment right to be free from oppression and badges of slavery.

## RULE 11. THE RIGHT TO PRIVACY IN CARING FOR PERSONAL NEEDS EXHIBIT J VIOLATIONS. EXHIBIT J RULE: A RESIDENT

## SHALL BE PERMITTED TO LEAVE AND RETURN TO THE FACILITY
## AND GROUNDS AT REASONABLE HOURS. VIOLATIONS

117.    Plaintiff's thirteenth and fourteenth amendment rights were violated by defendant Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah, we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. Defendant Julius and Acosta both threaten to call the police after exercise the ng my right. Julius stated: " If you refuse, I will have to call PD (short for NYPD)."

118.    Skyway men's shelter employee John Doe maintenance busting into plaintiff's bathroom seeing him but naked  affecting his right to be secure in his person and right to privacy.

119.    Defendant Acosta: " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendants Acosta and Julius Doe deprived me of the right to not be coerced. Defendants Acosta coerced the Plaintiff back into the same facility that violated his constitutional and statutory rights and broke his laptop i.e. damages his property without due process of law.

120.    Plaintiff was transferred after a New Years' day from the defendant NAICA Bronx park location to 61-63 location, but after submitting his documents [Exhibits c and d] showing that the plaintiff needed to put up in a bed from the hospital, [See exhibit c ]. The operation workers at the Bronx Park location began implementing the practice that the plaintiff could not sleep on more than one chair, so when the plaintiff would move to go use the bathroom the defendants Cruz, John Doe would take the chair away. When the plaintiff had come back, he noticed that the chair was gone. Plaintiff would have to beg the security guard for an extra chair to put his leg up after back and forth about the discharge papers. The plaintiff explained to them he just came from the hospital, and the pain that he felt was unbearable in his leg to the point that he had to hop. The plaintiff begged them for a transfer. Defendant Cruz worked towards the transfer after he repeatedly asked to be transferred before the bus driver left.

121.    After leaving the defendant DHS facility at the NAICA park avenue location the leg swelling and swelling went away once coerced to leave the facility with threats of and the actual use of police force, out of retaliation for the exercise of his right to speak, to deprive the plaintiff of a doctor recommendation, out of retaliation of his right to refuse a transfer. Defendants Anthony Acosta, Julius, Hyler, and Montagna all worked together

breaking the law to putting backing to the DHS facility at park avenue against the plaintiff's will. Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection.

## EXHIBIT J RULE: A RESIDENT SHALL NOT BE OBLIGED TO PERFORM WORK BY COERCION OR THREAT VIOLATIONS

122.     Defendant Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, Julius stated that the victim was "trespassing" when defendant Cheung first arrived. Defendant Acosta misrepresented to the plaintiff the purpose and intent of inquiries he made as to the plaintiffs' unemployment. Defendant Acosta refused to answer my questions. Defendant Acosta hung up on the plaintiff. Defendant Acosta stated to the plaintiff "I have nothing further to discuss with you" Defendant Acosta threateningly stated "you and I can personally discuss your issues. "

123.     After plaintiff to tells Mrs. montunga that he filed a police report last night against one of the shelter members,Mr. acosta,And that I was being transferred and I refused it mrs montunga responds because we're not going to do it this time. After plaintiff statement about criminal matter withMrs. montunga she states we use don't. At the plaintiff states he has a right to exercise his right, and he is exercising his right to refuse a transfer Mrs. montunga states OK if it's a criminal matter you'll take it in a criminal way feeling to address the issues of the criminality involved in the services, and the plaintiffs right to refuse transfers.this Hinder the prosecution of terrorism violating the criminal penal law.

124.     After Mrs. montunga asked the plaintive what shelter he wants to go to, and he begins to answer a shelter that.. She really cuts Him off and states no no no.

125.     After plaintiff stated again I am requesting to be transferred and Mrs. montunga State we're gonna call the shelter now, we're going to call you back ignoring the plaintiffs request again.

126.     Defendant Acosta turns the situation into a personal one. After this phone conversation between Acosta and the plaintiff, they began to continue to call the plaintiff for a meeting, about issues raised to DSS Plaintiff refused to go back to speak with him. Plaintiff's thirteenth and fourteenth amendment rights were violated by defendant Acosta Tony by his conduct in making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us and ah we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. The defendants Julius and defendant Tony both threatened to call the police after the plaintiff exercised his rights.

127.    Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Tony " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendants Acosta and Julius Doe deprived the plaintiff of the right to not be coerced. Defendant Montanga stated, "that's ok she, not your case manager" Defendant Montagna called to speak to the plaintiff, Plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to defendant Montagna, and that he asked to speak to defendant Hyler. Defendant Montagna stated disrespectfully "that's ok she, not your case manager." Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Plaintiff was told to speak to them on Thursday because the day he asked was New Year's day and he was also told that everyone will be back on Thursday. Thursday came only one caseworker was present, and he told the plaintiff the director has to schedule the decision and appoint the plaintiff a caseworker.

128.    The picture [Exhibit A ] shows plaintiff's swollen leg before the incident on January 9, 2019. December 14, 2020 (around or about) is the day plaintiff's leg began swelling again, in which plaintiff suspects come from either poor circulation because the NAICA staff wouldn't transfer me upon request and the plaintiff refused to stay there. The very first date plaintiff had the swelling happened in October when the plaintiff first came to the NAICA location. The time plaintiff spent writing and putting together his complaints and grievance to bring light and stop the tortfeasors stopped at the time and slowed down his employment search.

129.    Defendant Montanga stated the same words the next day as defendant Acosta did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving me to believe that defendants Acosta, Hyler, Montanga and Julius and staffing all conspired to deprive plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. Furthermore, defendant Julius stated it was a code 51, then later stated it was an administrative transfer.

130.    Defendant Julius denied me at first to refuse to state that code 51 was not a transfer. The defendant Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied,

yeah. The defendant Acosta stated: "Thank you for letting me know that, so I could correct that." In a threatening manner, The administration has handed over its right to assess issues of the perpetrator to the perpetrator, therefore, denying the plaintiff his right to be treated fairly. David Cuban a resident from the third floor of the NAICA facility was present during the incident and he entered the building at the same time as the plaintiff did but was allowed to go upstairs.

### EXHIBIT J RULE: THE RESIDENT MUST HAVE THE RIGHT TO HAVE HIS OR HER VERSION OF EVENTS LEADING TO AN INCIDENT OR INCIDENT IN WHICH HE/SHE IS INVOLVED INCLUDING ALL ACCIDENT OR INCIDENT REPORTS VIOLATIONS

131.    Defendant Montanga stated, " were not case managers", "ok she, not your case manager" Defendant Montagna called to speak to the plaintiff. Plaintiff stated to Defendant Montagna that he wasn't coming upstairs. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the defendant Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated "we are not your case managers" We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. Defendant Montunga stated that your not coming upstairs today.

132.    Defendant Bentley states I can't find it (referencing the grievance) in the computer system. I can't find it in the room.

133.    After explaining to Mrs. Montunga that it was a conflict of interest to speak with Mr. acosta for falsely reporting incident and harassing and tampering with a witness civil rights violations and civil liberties violations) she states can I talk something, the only thing we gonna do today is one.. we're going to send your case to the program administrator in the analogue they're going to arrange to meet with you because their supervisor also that we're going to be able to do so.

134.    After plaintiff stated I got documentation I wanted to submit to you, and you're not allowing me to do that Mrs. Montana State "we don't take your documentation."

135.    Defendant Hyler stated that your not coming upstairs today. Plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to you I asked to speak to her (defendant Hyler) she states disrespectfully that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. The DHS Ombudsman defendant Hyler and defendant Montanga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff, of his right to speak to the ombudsman.

136.    Plaintiff complained about the night before the event. Plaintiff asked defendant Julius for a grievance and wasn't allowed to get a grievance, because defendant Julius called police on the plaintiff instead. Defendant Julius made statements "he has to go" to security personnel and other staff. Defendant Julius violated the plaintiff's fourteenth amendment right, and New York state constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out. Plaintiff has come there in the past when my leg was swollen for the first time, they didn't transfer me but instead, Defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where I was deprived of my right to speak to the ombudsman. I was denied in the past to speak to the ombudsman defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating my right to press.

137.    Defendant Montanga hung up the phone on me thus violating the first amendment right to speech and to petition for redress. Defendant Montanga stated the same words the next day as defendant Tony did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving me to believe that defendant Acosta, defendant Hyler, defendant Montanga and defendant Julius and staffing all conspired to deprive plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location.

## EXHIBIT J RULE: RECEIVE A HEARING PRIOR TO TRANSFER OR DISCHARGE.VIOLATIONS

138.    Plaintiff's thirteenth and fourteenth amendment rights were violated by defendant Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. The defendant Julius and Acosta both threaten to call the police after exercising my right. Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Acosta " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendants Acosta and Julius Doe deprived the plaintiff of the right to not be coerced. Defendant Montanga stated, " were not case managers", "ok she, not your case manager".

139.    Defendant Bentley states I can't find it (referencing the grievance) in the computer system. I can't find it in the room.

140.   Defendant Montunga called to speak to the plaintiff, Plaintiff stated to Defendant Montunga that he wasn't coming upstairs On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the Case Manager Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montunga stated, "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to defendant Montagna, and that he asked to speak to defendant Hyler. Defendant Montunga disrespectfully stated, "that's ok, she, not your case manager". Insinuating that plaintiff asked to speak to a case manager.

141.   Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. Plaintiff complained about the night before the event. Plaintiff asked defendant Julius for a grievance and wasn't allowed to get a grievance, because defendant Julius called police on the plaintiff instead. Defendant Julius made statements "he has to go" to security personnel and other staff. Defendant Julius violated the plaintiff's fourteenth amendment right, and New York state constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out.

142.   Plaintiff has come there in the past when his leg was swollen for the first time, they didn't transfer him but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me. Defendant Hyler and defendant Montanga on July 10, 2020, stated, "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff, of his right to speak to the ombudsman. This is not the first incident where the plaintiff was deprived of his right to speak to the ombudsman.

143.   Plaintiff was denied in the past the right to speak to the defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating my right to press. Defendant Montanga hung up the phone on me thus violating the first amendment right to speech and to petition for redress. Defendant Montanga stated the same words the next day as defendant Acosta did the night before in the phone conversation "you have a good day ok". Defendant Acosta stated "you have a good day good day sir" thus leaving the plaintiff to believe that defendants Acosta, Hyler, Montanga, and Julius and staffing all conspired to deprive the plaintiff of his right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. The defendants Julius and Acosta both threatened to call the police after the plaintiff exercised his rights. Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Tony

stated: "We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!"

144.    Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection. Plaintiff's thirteenth and fourteenth amendment rights were violated by defendant Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers.

145.    Defendant Julius and Acosta both threatened to call the police after exercising my right. Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Acosta stated " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendants Acosta and Julius Doe deprived the plaintiff of his right to not be coerced. Defendant Montanga stated, "were not case managers", "ok she, not your case manager" Defendant Montagna called to speak to the plaintiff, Plaintiff stated to Defendant Montagna that he wasn't coming upstairs. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA".

146.    Plaintiff Spoke to defendant Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Plaintiff clarified that he didn't ask to speak to defendant Montagna, that he asked to speak to defendant Hyler. Defendant Montanga disrespectfully stated "that's ok she, not your case manager." Insinuating that plaintiff asked to speak to a case manager.

147.    Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. Plaintiff has come there in the past when my leg was swollen for the first time, they didn't transfer me but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." Plaintiff was transferred after a New Years' day from the NAICA Bronx park location to 61-63

location, but after submitting his documents [Exhibits c ] showing that the plaintiff needed to put up in a bed from the hospital.

148.    The operation workers at the Bronx Park location began implementing the practice that the plaintiff could not sleep on more than one chair, so when the plaintiff would move to go use the bathroom the workers [defendants Cruz, John Doe] would take the chair away. When the plaintiff had come back, he noticed that the chair was gone. The plaintiff would have to beg the security guard for an extra chair to put his leg up after back and forth about the discharge papers. The plaintiff explained to them he just came from the hospital, and the pain that he felt was unbearable in his leg to the point that he had to hop. The plaintiff begged them for a transfer. Defendant Cruz worked towards the transfer after he repeatedly asked to be transferred before the bus driver left.

149.    After leaving the DHS facility at the NAICA park avenue location the leg swelling and swelling went away once coerced to leave the facility with threats of and the actual use of police force, out of retaliation for the exercise of his right to speak, to deprive the plaintiff of a doctor recommendation, out of retaliation of his right to refuse a transfer. Defendants Acosta, Julius, Hyler, and Montagna all worked together breaking the law to putting backing to the DHS facility at park avenue against the plaintiff's will.

150.    Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection. Thus, further, the plaintiff suspects repeatedly taking away my lab top possibly breaking it again. Plaintiff refused to go back there and go through the same procedures that he was going through there as far as handing over his property stating to defendant Acosta that not nobody's business to be an ah have possession of my property." Defendant Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied, yeah. The defendant Acosta stated: "Thank you for letting me know that, so I could correct that." In a threatening manner. The Naica staff and Acosta conspired to deprive the plaintiff of a bed on January 9, 2020. Defendant Acosta stated to the plaintiff during the telephone conversation "you would not be bedded over there."

151.    Defendant Acosta stated: "you would not be a bedded over there" in direct violation of DHS policy. Defendant Acosta misrepresented to the plaintiff the purpose and intent of inquiries he made as to my unemployment. Defendant Acosta refused to answer my questions. Defendant Acosta hung up on the plaintiff. Defendant Acosta stated to the

plaintiff "I have nothing further to discuss with you" Defendant Acosta threateningly stated "you and I can personally discuss your issues. "Defendant Acosta turns the situation into a personal one. After this phone conversation between defendant Acosta and the plaintiff then began to continue to call the plaintiff for a meeting, about issues raised to DSS.

152.   Plaintiff refused to go back to speak with him. Plaintiff's thirteenth and fourteenth amendment rights were violated by defendant Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. The defendants Julius and defendant Tony both threaten to call the police after exercising my right.

153.   Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Tony " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendants Acosta and Julius Doe deprived the plaintiff of the right to not be coerced. Defendant Montanga stated, " were not case managers", "ok she, not your case manager" Defendant Montanga openly discriminating against the plaintiff when she stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. On January 10, 2020, defendant Montanga stated: "You come to our office several times; you're not coming upstairs today." On January 10, 2020, Plaintiff was sent back to the DHS Bronx Park avenue transitional housing location at 3339 Park Avenue location because defendant Acosta stated: "because you were late."

## EXHIBIT J RULE: RECEIVE COURTEOUS, FAIR, AND RESPECTFUL CARE AND TREATMENT FROM AND TOWARDS STAFF.VIOLATIONS

154.   On January 10, 2020, the plaintiff went to the defendant DHS facility but was told by defendant Montuga to speak with a caseworker to be transferred by the deputy director. Defendants John Doe violated the New York State and Federal constitutional rights to be secured in his home and effects and fourth amendment right to be free from unlawful and unreasonable seizures of his property and without a warrant, nor justifiable probable cause. As the defendant security guard John Doe explained to him it's to protect you, to protect your laptop from being stolen." After explaining that the plaintiff's laptop was used for litigation, it was still confiscated repeatedly.

155.   Defendant Mr Jackson stated: "don't worry they going to get you outta here soon." Not respectful.

156.   Defendant Mrs.rodriguez states can you get this guy outta here? Not respectful.

157.   Defendant Bentley states I can't find it (referencing the grievance) in the computer system. I can't find it in the room.  Not fair treatments.

158.   Plaintiff was searched every night while a resident there and every other shelter that he attended including the NAICA park avenue location. Plaintiff's laptop was confiscated every night. After the laptop was broken by NAICA Personnel, the plaintiff was forced to buy a new one. Plaintiff was never called back, after speaking with the defendants Montunga And Hyler **on January 10, 2020, by NAICA after, or DHS showing their intent.**

159.   Plaintiff filed a grievance with defendant Freeze informing her that he was vegan, not able to get a reasonable accommodation to be supplied with a vegan diet at any facility. Defendant Freeze left the room to check the policy, returned and confirmed during the meeting that the DHS policy [Exhibit____] according to mr freeze & the nycrr stated that "the facility is supposed to accommodate you according to your diet." DHS Policy [Exhibit____] states: _____

160.   Despite the plaintiffs' request, refusal of a transfer, corresponding grievances, and doctors' discharge papers. The defendants Julius and Tony both threaten to call the police after the plaintiff exercised his right. Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Defendant Acosta stated: " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!"

161.   Defendants Acosta and Julius Doe deprived the plaintiff of the right to not be coerced. Plaintiff complained about the night before the event. Plaintiff asked defendant Julius for a grievance and wasn't allowed to get a grievance, because defendant Julius called police on the plaintiff instead. Defendant Julius made statements "he has to go" to security personnel and other staff. Defendant Julius violated the plaintiff's fourteenth amendment right, and New York state constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out.

162.    Plaintiff has come there in the past when his leg was swollen for the first time, they didn't transfer him but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where the plaintiff was deprived of his right to speak to the ombudsman. Plaintiff was denied in the past his right to speak to defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating plaintiffs' right to press.

163.    Defendant Montanga hung up the phone on the plaintiff thus violating the first amendment right to speech and to petition for redress (retaliation). Defendant Montanga stated the same words the next day, as the defendant Acosta stated the night before in the phone conversation "you have a good day ok". Defendant Acosta stated "you have a good day good day sir" thus leaving the plaintiff to believe that defendants Acosta, Hyler, Montanga, Julius, and staffing all conspired to deprive the plaintiff of his right to stay at the Chrystie street location, his right to be bedded, right to press, right to speech, right to be secured in his property, right to be seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location.

164.    Furthermore, defendant Julius stated it was a code 51, then later stated it was an administrative transfer. Defendant Julius denied me at first to refuse to state that code 51 was not a transfer. A little later defendant Julius stated it was an administrative transfer. Plaintiff was transferred after a New Years' day from the NAICA Bronx park location to 61-63 location, but after submitting his documents [Exhibits c and d] showing that the plaintiff needed to put up in a bed from the hospital, [See exhibit c].

165.    Defendants Cruz and John Doe at the Bronx Park location began implementing the practice prohibiting the plaintiff from sleeping on more than one chair. When the plaintiff goes to the restroom the defendants Cruz and or Doe would take the chair away. When the plaintiff returned, he noticed that the chair was gone. The plaintiff would have to beg the security guard for an extra chair to put his leg up after back and forth about the discharge papers. The plaintiff explained to the defendants Cruz and John Doe that he just came from the hospital, and the pain that he felt was unbearable in his leg to the point that he had to hop. 27.

166.    The plaintiff begged the defendants, Cruz and Doe, for a transfer. Defendant Cruz worked towards the transfer after the plaintiff repeatedly asked to be transferred before the bus driver left. After leaving the defendant DHS facility at the NAICA park avenue location, the plaintiffs' leg swelling went away once he was coerced to leave the facility with threats of and the actual use of police force, out of retaliation for the exercise of his

right to speak, to deprive the plaintiff of a doctor recommendation, out of retaliation of his right to refuse a transfer.

167.    Defendants Acosta, Julius, Hyler, and Montagna all worked together in depriving the plaintiff of his rights and causing him to remain at the DHS facility at park avenue against the plaintiff's will. Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection. Thus, further, the plaintiff suspects repeatedly taking away my lab top possibly breaking it again Plaintiff refused to go back there and go through the same procedures that he was going through there as far as handing over his property stating to defendant Acosta that not nobody's business to be and ah have possession of my property."

168.    The defendant Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied, yeah. The defendant Acosta stated: "Thank you for letting me know that, so I could correct that." In a threatening manner. The administration has handed over its right to assess issues of the perpetrator to the perpetrator, therefore, denying the plaintiff his right to be treated fairly.

### EXHIBIT J RULE: STAFF MUST NOT THREATEN OR INTIMIDATE YOU. VIOLATIONS

169.    Plaintiff was transferred after a New Years' day from the NAICA Bronx park location to 61-63 location, but after submitting his documents [Exhibits c and d ] showing that the plaintiff needed to put up in a bed from the hospital, [See exhibit c]. Defendants Cruz and Doe began implementing the practice that the plaintiff could not sleep on more than one chair, so when the plaintiff would move to go use the bathroom the workers would take the chair away. When the plaintiff had come back, he noticed that the chair was gone. The chair plaintiff would use was from after others get up Or the plaintiff would have to beg the security guard for an extra chair to put his leg up after back and forth about the discharge papers.

170.    Defendant Mr Jackson stated: "don't worry they going to get you outta here soon."

171.    Defendant Mrs.rodriguez states can you get this guy outta here?

172.    Mr anthony Acosta stated when that bus come and you do not get on that buss police will be called.mr Julius doe states if you refuse the transfer then (imma have to call of short for nypd)

173.   Defendant D. Robinson got into my face and threatened plaintiff.Security guards at skyway men's shelter acted unruly in my presence when worker defendant mr Jackson battered and intimidated plaintiff to do harm to him with a weapon in his pocket and got into my face plaintiff and defendant mr Clinton nor defendant mr Jackson would give me there names upon request.

174.   After plaintiff to tells Mrs. montunga that he filed a police report last night against one of the shelter members,Mr. acosta,And that I was being transferred and I refused it mrs montunga responds because we're not going to do it this time. After plaintiff statement about criminal matter withMrs. montunga she states we use don't. At the plaintiff states he has a right to exercise his right, and he is exercising his right to refuse a transfer Mrs. montunga states OK if it's a criminal matter you'll take it in a criminal way feeling to address the issues of the criminality involved in the services, and the plaintiffs right to refuse transfers.this Hinder the prosecution of terrorism violating the criminal penal law.

175.   Defendant Mrs. Rodriguez told the plaintiff get the fuck outta here here she slams the plexus glass in plaintiff's face, "I don't know why you feel like you entitled to a bed?" "I don't know why he feels like he is entitled?" Can you get this guy outta here?

176.   The plaintiff explained to them he just came from the hospital, and the pain that he felt was unbearable in his leg to the point that he had to hop. The plaintiff begged them for a transfer. Defendant Cruz worked towards the transfer after he repeatedly asked to be transferred before the bus driver left. After leaving the DHS facility at the NAICA park avenue location the leg swelling and swelling went away once coerced to leave the facility with threats of and the actual use of police force, out of retaliation for the exercise of his right to speak, to deprive the plaintiff of a doctor recommendation, out of retaliation of his right to refuse a transfer.

177.   Mr. Jackson got into my face with his hand in his pocket attempting to use a weapon on plaintive causing an expected reasonable fear.

178.   Defendants Acosta, Julius, Hyler, and Montagna all worked together breaking the law to cause the plaintiff to have to remain at the DHS facility at park avenue against the plaintiff's will. Defendant Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection. Thus, further, the plaintiff suspects repeatedly to take away my lab.top possibly breaking it again.

179.   Plaintiff refused to go back there and go through the same procedures that he was going through there as far as handing over his property stating to defendant Acosta that

not nobody's business to be and ah have possession of my property." defendant Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied, yeah. The defendant Acosta stated: "Thank you for letting me know that, so I could correct that" in a threatening manner.

180.   Defendant John Doe violated the New York State and Federal constitutional rights to be secured in his home and effects and fourth amendment right to be free from unlawful and unreasonable seizures of his property and without a warrant, nor justifiable probable cause. As the defendant John doe (security guard) explained to plaintiff it's to protect you, to protect your laptop from being stolen". After explaining that the plaintiffs' laptop was used for litigation, it was still confiscated repeatedly. On January 10, 2020, the plaintiff went to the DHS facility but was told by defendant Montunga to speak with a caseworker to be transferred by the deputy director. This violated nys constitution ss 7Conversation for taking private property, plaintiff received no money, no due process; grievance was filed.

## EXHIBIT J RULE: STAFF MUST NOT CURSE OR INSULT VIOLATIONS

181.   Defendant Montunga called to speak to the plaintiff. Plaintiff stated to Defendant Montunga that he wasn't coming upstairs. On or about October 29, 2019, defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the defendant Jane Doe. Plaintiff filed grievances

182.   On January 10, 2020, defendant Montunga stated "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. Plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to defendant Montunga , that he asked to speak to defendant Hyler she disrespectfully stated: "that ok" she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her.

183.   The defendants Montunga and Hyler violated the plaintiff's First Amendment Right to Speech and Petition. Defendants Montunga openly discriminated against the plaintiff when she stated: "You come to our office several times, you're not coming upstairs today." The defendant's DHS policy states that clients have the right to see the ombudsman. The time plaintiff spent writing and putting together his complaints and grievances to bring light and stop the tortfeasors stopped at the time and slowed down his

employment search. The DHS Ombudsman defendant Hyler and defendant Montunga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff of his right to speak to the ombudsman...

184.   During the two-week duration of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location, the plaintiff was prohibited from speaking to the caseworker. Plaintiff was told to speak to the caseworker on Thursday because the day he asked was New Year's Day. Plaintiff was informed that everyone will be back on Thursday. When Thursday arrived, only one caseworker was present, and he told the plaintiff, the director has to schedule the decision and appoint the plaintiff a caseworker.

### EXHIBIT J RULE: STAFF MUST NOT ACT IN AN UNRULY OR  UNRULY MANNER IN YOUR PRESENCE VIOLATIONS

185.   Defendant Montunga called to speak to the plaintiff, Plaintiff stated to Defendant Montunga that he wasn't coming upstairs. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the defendant Jane Doe (Case Manager), Plaintiff filed grievances.

186.   Defendant D. Robinson got into my face and threatened plaintiff.

187.   Security guards at skyway men's shelter acted unruly in my presence when worker defendant Mr Jackson battered and intimidated plaintiff to do harm to him with a weapon in his pocket and got into my face plaintiff and defendant Mr Clinton nor defendant Mr Jackson would give me there names upon request.

188.   Defendant Bentley states I can't find it (referencing the grievance) in the computer system. I can't find it in the room.

189.   Defendant D. Robinson got into my face and threatened plaintiff.Security guards at skyway men's shelter acted unruly in my presence when worker defendant mr Jackson battered and intimidated plaintiff to do harm to him with a weapon in his pocket and got into my face plaintiff and defendant mr Clinton nor defendant mr Jackson would give me there names upon request.

190.   After plaintiff to tells Mrs. montunga that he filed a police report last night against one of the shelter members,Mr. acosta,And that I was being transferred and I refused it mrs montunga responds because we're not going to do it this time. After plaintiff statement

about criminal matter withMrs. montunga she states we use don't. At the plaintiff states he has a right to exercise his right, and he is exercising his right to refuse a transfer Mrs. montunga states OK if it's a criminal matter you'll take it in a criminal way feeling to address the issues of the criminality involved in the services, and the plaintiffs right to refuse transfers.this Hinder the prosecution of terrorism violating the criminal penal law.

191.    Defendant Mrs. Rodriguez told the plaintiff get the fuck outta here here she slams the plexus glass in plaintiff's face, "I don't know why you feel like you entitled to a bed?" "I don't know why he feels like he is entitled?" Can you get this guy outta here?

192.    After plaintiff asserts I'm not going to sit here and keep going back-and-forth with you, Mrs. montunga the states offensively Mr. Kelly.

193.    After Mrs. montunga asked the plaintiff what shelter he wants to go to, and he begins to answer a shelter that.. She really cuts Him off and states no no no.

194.    After plaintiff stated again I am requesting to be transferred and Mrs. montunga State we're gonna call the shelter now, we're going to call you back ignoring the plaintiffs request again.

195.    On January 10, 2020, defendant Montanga stated "we are not your case managers", we are not your cam" and referred to defendant Hyler, suggesting that plaintiff go to the shelter. Only the shelter has caseworkers. Plaintiff clarified that he was asking to speak to the ombudsman, that he didn't ask to speak to defendant Montagna, that he asked to speak to defendant Hyler. Defendant Montagna disrespectfully stated, "that's ok she not your case manager". Insinuating that plaintiff asked to speak to a case manager.

196.    At the plaintiff states year, I'm downstairs am i going to speak to somebody?Mrs. Montunga states we don't have any decision-making, Mrs. montunga State we're going to call you and tell you the decision.the dhs website states: "The Office is an independent and impartial unit whose mission is to support New York City's homeless population, assist them on their path to fair access to essential resources, improve their quality of life while in shelter, and advocate for a meaningful role in the decision-making processes that affect their Lives." This directly violates the duty of the office of the ombudsman and Mrs hyler & mr Montunga failed to act fairly and failed to perform her duty to make.

197.    Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. The defendants Montunga and Hyler violated my First Amendment Right to Speech and Petition. Defendants Montagna openly discriminating against the plaintiff stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. The time plaintiff spent writing and putting together his complaints and grievance to bring light and stop the tortfeasors stopped at the time and slowed down his employment search.

198.   The defendant Hyler and defendant Montanga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff of his right to speak to the ombudsman. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Plaintiff was told to speak to them on Thursday because the day he asked was New Year's day and was told that everyone will be back on Thursday. Thursday came only one caseworker was present, and he told the plaintiff the director has to schedule the decision and appoint the plaintiff a caseworker.

### EXHIBIT J RULE: STAFF MUST NOT DISPLAY AN UNWELCOME FAMILIARITY OR IN ANY OTHER WAY TREAT YOU WITH DISRESPECT

199.   Defendant Montagna called to speak to the plaintiff. Plaintiff stated to Defendant Montage that he wasn't coming upstairs 84. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the Case Manager Jane Doe, Plaintiff filed grievances.

200.   On January 10, 2020, defendant Montanga stated "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. plaintiff clarified and I stated that I'm asking to speak to the ombudsman I didn't ask to speak to you I asked to speak to her (defendant Hyler) Mrs. montunga states disrespectfully that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her.

201.   The defendants Montunga and the defendant Hyler violated my First Amendment Right to Speech and Petition. In openly discriminating against plaintiff, the defendant Montanga stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. The time plaintiff spent writing and putting together his complaints and grievance to bring light and stop the tortfeasors stopped at the time and slowed down his employment search.

202.    The defendant Hyler and defendant Montanga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." Thus, depriving Plaintiff, of his right to speak to the ombudsman. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Plaintiff was told to speak to them on Thursday because the day he asked was New Year's day and was told that everyone will be back on Thursday.

203.    Thursday came only one caseworker was present, and he told the plaintiff the director has to schedule the decision and appoint the plaintiff a caseworker. David Cuban a resident from the third floor of the defendant NAICA facility was present during the incident and he entered the building at the same time as the plaintiff did but was allowed to go upstairs.

204.    The defendants Montunga and the defendant Hyler violated my First Amendment Right to Speech and Petition. Defendants Montunga openly discriminating defendant Montunga stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. Defendant Anthony Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, Julius stated that the plaintiff was "trespassing" when police officer Cheung first arrived. Plaintiff complained about the night before the event. He asked Julius for a grievance and wasn't allowed to get a grievance, because Julius called police on the plaintiff instead.

205.    Julius made statements "he has to go" to security personnel and other staff. The program director Julius violated the plaintiff's fourteenth amendment right, and New York state constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out. After asking if I could file a police report defendant  Cheung stated no all right my man using a derogatory term to deprive the plaintiff. Such language is used by a black man when angered was used by defendant Cheung to mock the plaintiff cause he's black. The defendants Montagna and the defendant Hyler violated my First Amendment Right to Speech and Petition.

206.    Defendants Montunga in openly discriminating against plaintiff stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Thursday came only one caseworker was present, and he told the plaintiff the director has to schedule the decision and appoint the plaintiff a caseworker.

207. Thus, depriving Plaintiff, of his right to speak to the ombudsman. Plaintiff complained about the night before the eve. Defendant Acosta misrepresented to the plaintiff the purpose and intent of inquiries he made as to my unemployment. Defendant Acosta refused to answer my questions. Defendant Acosta hung up on the plaintiff. Defendant Anthony Acosta told the plaintiff to have a good day. Defendant Acosta stated to the plaintiff "I have nothing further to discuss with you". Furthermore, Julius stated it was a code 51, then later stated it was an administrative transfer. Julius denied me at first to refuse to state that code 51 was not a transfer.

208. Plaintiff complained about the night before the event. He asked Julius for a grievance and wasn't allowed to get a grievance, because Julius called police on the plaintiff instead. Julius made statements "he has to go" to security personnel and other staff. The program director Julius violated the plaintiff's fourteenth amendment right, and New York state constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out.

209. NAICA Security personnel defendants John Doe violated the New York State and Federal constitutional rights to be secured in my home and effects and fourth amendment right to be free from unlawful and unreasonable seizures of my property and without a warrant, nor justifiable probable cause. As the security guard explained to him it's to protect you, to protect your laptop from being stolen." After explaining that my laptop was used for litigation, it was still confiscated repeatedly. Plaintiff was searched every night while a resident there and every shelter that he attended NAICA park avenue location.

210. Plaintiff's laptop was confiscated every night. After the laptop was broken by NAICA Personnel, the plaintiff was forced to buy a new one. Defendant Anthony Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection. Thus, further, the plaintiff suspects repeatedly to take away my lab top possibly breaking it again. The defendant Anthony Acosta stated: "Thank you for letting me know that, so I could correct that." In a threatening manner. Plaintiff's laptop was broken in the possession of the NAICA security personnel, after being confiscated.

211.   NAICA Security personnel defendants John Doe violated the New York State and Federal constitutional rights to be secured in my home and effects and fourth amendment right to be free from unlawful and unreasonable seizures of my property and without a warrant, nor justifiable probable cause. As the security guard explained to him it's to protect you, to protect your laptop from being stolen." After explaining that my laptop was used for litigation, it was still confiscated repeatedly.

212.   Plaintiff contends that DHS's interest in conspiring to keep him at the NAICA Bronx park location was in part premised upon Criminal negligent homicide. Plaintiff was searched every night while a resident there and every shelter that he attended NAICA park avenue location. The plaintiffs' laptop was confiscated every night. After the laptop was broken by NAICA Personnel, the plaintiff was forced to buy a new one. On January 10, 2020, Defendant Montanga stated: "You come to our office several times; you're not coming upstairs today."

213.   On January 10, 2020, Plaintiff was sent back to the defendant DHS Bronx Park avenue transitional housing location at 3339 Park Avenue location because defendant Anthony Acosta stated: "because you were late." David Cuban a resident from the third floor of the NAICA facility was present during the incident and he entered the building at the same time as the plaintiff did but was allowed to go upstairs. Defendant Acosta stated: "you would not be a bedded over there" in direct violation of DHS policy. Negligence Repeated Fiduciary Duty Of Care Violations [Exhibit R ].

214.   Defendant Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, Julius stated that the victim was "trespassing" when defendant Cheung first arrive. The defendant Cheung didn't allow me to file a criminal complaint report against whoever called the cops on me that's violating the 14th amendment right to equal protection of the law, Press, Defendant Acosta misrepresented to the plaintiff the purpose and intent of inquiries he made as to my unemployment.

215.   Defendant Acosta refused to answer my questions. Defendant Acosta hung up on the plaintiff. Defendant Acosta told the plaintiff to have a good day. Defendant Acosta stated to the plaintiff "I have nothing further to discuss with you". Defendant Anthony Acosta threateningly stated, "you and I can personally discuss your issues. "

216.   Plaintiff's thirteenth and fourteenth amendment rights were violated by Acosta by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. The defendants Julius and Acosta both threatened to call the police after exercising my right. Defendant Julius stated: " If you refuse, I will have to call PD (short for NYPD)."

217.   Defendant Montagna called to speak to the plaintiff. Plaintiff stated to Defendant Montagna that he wasn't coming upstairs. On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the Case Manager Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated, "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers.

218.   Plaintiff clarified and I stated that I'm asking to speak to the ombudsman I didn't ask to speak to you I asked to speak to her (defendant Hyler) she states disrespectfully that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her. The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay.

219.   Plaintiff filed a grievance to the last defendant freeze informing her that he was vegan, not able to get a reasonable accommodation to be supplied with a vegan diet at the facility any facility daily. Defendant freeze left the room to check the policy, returned and confirmed during the meeting that the DHS policy [Exhibit____] according to Mrs. freeze & nycrr 491.12 stated that "the facility is supposed to accommodate you according to your diet." DHS Policy [Exhibit____] states: _____.

220.   Plaintiff was kicked out the night he tried to father please report with the 17th precinct. Plaintiff went back to the 17th precinct to get the complaint number a couple of days later and was told that there was no report filed. Thus, violating the plaintiffs New York state constitutional ss 8, and 1st amendment constitutional right to press and petition

the government for a redress of grievances and NYS constitution ss 9 "right" to assemble and petition. David Cuban a resident from the third floor of the NAICA facility was present during the incident and he entered the building at the same time as the plaintiff did but was allowed to go upstairs.

221.    The defendant Cheung didn't allow me to file a criminal complaint report against whom ever called the cops on me that's violating the 14th amendment right to equal protection of the law, Press, The defendant Bullups badge No.____took the police report. After going back and forth between the plaintiff explaining to her and defendant Mahoney, the report was completed. The Badge number_____ and Sargent _____ was the supervisor at the time. Defendant Mahoney told the plaintiff he would have to come back and ask for the complaint number at a later date. Plaintiff was kicked out the night he tried to father please report with the 17th precinct. Plaintiff went back to the 17th precinct to get the complaint number a couple of days later and was told that there was no report filed. Thus, violating the plaintiffs New York state constitutional ss 8, and 1st amendment constitutional right to press and petition the government for a redress of grievances and NYS constitution ss 9 "right" to assemble and petition.

## GROUNDS FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

222.    The defendants Montunga and the defendant Hyler violated my First Amendment Right to Speech and Petition. Defendants Montunga openly discriminating against plaintiff, defendant Montanga stated: "You come to our office several times, you're not coming upstairs today." The DHS policy states that clients have the right to see the ombudsman Defendants Anthony Acosta coerced the Plaintiff back into the same facility that violated his constitutional and statutory rights and broke his laptop i.e., damages his property without due process of law. Defendants denied Plaintiff bedding in NAICA comfort INN hotel which Is a violation of [ss1] of the New York state constitution and DHS Policy Article XVIII Housing §1. Housing and nursing home accommodations for persons of low income; slum clearance. "The applicants relied on Article XVII, §1 of the State Constitution, requiring that the State provide "for the aid, care and support of the needy in such manner and by such means, as the legislature may from time to time determine".

223.    On January 10, 2020, the plaintiff went to the DHS facility but was told by defendant Montuga to speak with a caseworker to be transferred by the deputy director. The administration has handed over its right to assess issues of the perpetrator to the

perpetrator, therefore, denying the plaintiff his right to be treated fairly. As stated in Article 4 of the DHS Policy client's rights "A resident shall have the right to receive courteous, fair, and respectful care and treatment. A resident has shall be permitted to leave and return to the facility and grounds at reasonable hours. As a resident and the victim has plaintiff attempted to seek relief." Plaintiff has suffered a swollen leg as a result of the defendant's conduct, for the second time. Civil rights violated the DHS policy Client's rights states that the client's civil rights shall not be infringed.

224. The DHS staff have initiated actions that violated Plaintiff's rights secured by the NY and federal constitutions. On January 10, 2020, defendant Montanga stated: "You come to our office several times; you're not coming upstairs today." On january 10, 2020, Plaintiff was sent back to the defendant DHS Bronx Park avenue transitional housing location at 3339 Park Avenue location because defendant Anthony Acosta stated: "because you were late." David Cuban a resident from the third floor of the NAICA facility was present during the incident and he entered the building at the same time as the plaintiff did but was allowed to go upstairs. The NAICA Security Guard's question Julius, about David Cuban. Julius stated: "Oh he good." The Naica staff and Anthony Acosta conspired to deprive the victim of a bed on January 9, 2020. Anthony stated to the victim during the telephone conversation "you would not be bedded over there."

225. Defendant Anthony Acosta stated: "you would not be a bedded over there" in direct violation of DHS policy. Defendant Anthony Acosta conspired with defendant Julius Doe to call the police and misrepresent facts about the plaintiff, out of retaliation, Julius stated that the plaintiff was "trespassing" when police officer Cheung first arrived. Defendant Anthony Acosta misrepresented to the plaintiff the purpose and intent of inquiries he made as to my unemployment . Defendant Anthony Acosta refused to answer my questions. Defendant Anthony Acosta hung up on the plaintiff Defendant Anthony Acosta told the plaintiff to have a good day. Defendant Anthony Acosta stated to the plaintiff "I have nothing further to discuss with you Defendant Anthony Acosta threateningly stated "you and I can personally discuss your issues. " Defendant Anthony Acosta Tony turns the situation into a personal one. After this phone conversation between defendant Acosta and the plaintiff, began to continue to call the plaintiff for a meeting, about issues raised to DSS.

226. Plaintiff refused to go back to speak with him. Plaintiff's thirteenth and fourteenth amendment rights were violated by Acosta Tony by making a parental decision by stating once asked what was the reason for me being transferred back? "Ah, we didn't necessarily need a reason the site you're at falls under us, and ah we felt it was best that you're better accommodated over here." Despite my request and refusal of a transfer and corresponding grievances, and doctors' discharge papers. The workers Julius and Tony

both threaten to call the police after exercising my right. Julius stated: " If you refuse, I will have to call PD (short for NYPD)." Tony " We will provide you with transportation um but just to let you know when transportation arrives if you do not get on to that transportation, police will be called. A refusal is not a transfer nor a means to coerce!" Defendants Anthony Acosta and Julius Doe deprived me of the right to not be coerced.

227.   Defendant Montanga stated, " were not case managers", "ok she, not your case manager" Defendant Montagna called to speak to the plaintiff, Plaintiff stated to Defendant Montage that he wasn't coming upstairs On or about October 29, 2019, Defendant Hyler stated: "to go back to the shelter "NAICA" so that they can have you transferred. Plaintiff went back to the shelter "NAICA". Plaintiff Spoke to the Case Manager Jane Doe, Plaintiff filed grievances. On January 10, 2020, defendant Montanga stated "we are not your case managers". We are not your cam and referred to defendant Hyler suggesting that plaintiff go to the shelter." Only the shelter has caseworkers. plaintiff clarified and I stated that I'm asking to speak to the ombudsman I didn't ask to speak to you I asked to speak to her (defendant Hyler) mrs Montunga states disrespectfully that ok she, not your case manager. Insinuating that plaintiff asked to speak to a case manager. Plaintiff never mentioned anything about a case manager at the beginning of the conversation to that point while talking to her.

228.   The whole time of the plaintiff's stay at the NAICA comfort inn Bronx transitional housing program 61-63 Chrystie street location the plaintiff was never allowed to speak to the caseworker after almost two weeks of stay. Plaintiff was told to speak to them on Thursday because the day he asked was New Year's day and was told that everyone will be back on Thursday. Thursday came only one caseworker was present, and he told the plaintiff the director has to schedule the decision and appoint the plaintiff a caseworker. The picture [Exhibit A ] shows plaintiff's swollen leg before the incident on January 9, 2019. December 14, 2020 (around or about) is the day plaintiff's leg began swelling again, in which plaintiff suspects come from either poor circulation because the NAICA staff wouldn't transfer me upon request and the plaintiff refused to stay there. The very first date plaintiff had the swelling happened in October when the plaintiff first came to the NAICA location.

229.   The time plaintiff spent writing and putting together his complaints and grievance to bring light and stop the tortfeasors stopped at the time and slowed down his employment search. 221. The DHS Ombudsman defendant Hyler and defendant Montanga on July 10, 2020, stated "you come to our office several times; you're not coming upstairs today." 222. Thus, depriving Plaintiff, of his right to speak to the ombudsman. 223. Plaintiff complained about the night before the event. He asked Julius for a grievance and wasn't allowed to get a grievance, because Julius called police on the plaintiff instead. Julius

made statements "he has to go" to security personnel and other staff. The program director Julius violated the plaintiff's fourteenth amendment right, and New York state constitutional right to petition the government for redress of grievances by not giving the plaintiff a grievance form to fill out.

230.   Plaintiff has come there in the past when my leg was swollen for the first time, they didn't transfer me but instead, defendant Hyler told me: "you have to ask your caseworker which I never had to transfer me." This is not the first incident where I was deprived of my right to speak to the ombudsman.  Plaintiff was denied in the past to speak to the ombudsman defendant Freeze in person as well as unanswered emails, on more than one occasion. Thus, violating my right to press. The defendant Montanga hung up the phone on me thus violating the first amendment right to speech and to petition for redress. Defendant Montanga stated the same words the next day as defendant Tony did the night before in the phone conversation "you have a good day ok" tony state "you have a good day good day sir" thus leaving me to believe that defendant Acosta, defendant Hyler, defendant Montanga and defendant Julius and staffing all conspired to deprive me of my right to stay at the Chrystie street location, to be bedded, press, speech, secured in my property, seen on grievances without threat or retaliation at the 61-63 Chrystie street men's shelter location. Furthermore, Julius stated it was a code 51, then later stated it was an administrative transfer. Julius denied me at first to refuse to state that code 51 was not a transfer. A little later defendant Julius stated it was an administrative transfer.

231.   Plaintiff was transferred after a New Years' day from the NAICA Bronx park location to 61-63 location, but after submitting his documents [Exhibits c and d -doctors recommendations ] showing that the plaintiff needed to put up in a bed from the hospital, [See exhibit C ].   The operation workers at the Bronx Park location began implementing the practice that the plaintiff could not sleep on more than one chair, so when the plaintiff would move to go use the bathroom the workers [defendants Cruz and John Doe] would take the chair away. When the plaintiff had come back, he noticed that the chair was gone.  The chair plaintiff would use was from after others get up Or the plaintiff would have to beg the security guard for an extra chair to put his leg up after back and forth about the discharge papers. The plaintiff explained to them he just came from the hospital, and the pain that he felt was unbearable in his leg to the point that he had to hop. The plaintiff begged them for a transfer.

232.   Defendant Cruz worked towards the transfer after he repeatedly asked to be transferred before the bus driver left. After leaving the defendant DHS facility at the NAICA park avenue location the leg swelling and swelling went away once coerced to leave the facility with threats of and the actual use of police force, out of retaliation for the exercise of his right to speak, to deprive the plaintiff of a doctor recommendation, out

of retaliation of his right to refuse a transfer. Defendants Acosta, Julius, Hyler, and Montagna all worked together breaking the law to putting backing to the DHS facility at park avenue against the plaintiff's will.

233.   Defendant Anthony Acosta stated: "aw well ah didn't necessarily need a reason the site that you're at falls under us and ah well felt it was best that you'll be better accommodated over here.") where the plaintiff suspected to give me a leg infection. Thus, further, the plaintiff suspects repeatedly to take away my lab top possibly breaking it again. Plaintiff refused to go back there and go through the same procedures that he was going through there as far as handing over his property stating to Anthony Acosta that not nobody's business to be and ah have possession of my property." The defendant Anthony Acosta interrupted and asked, "when you say your equipment you're saying where you are right now, they allow you to have your stuff?" Plaintiff replied, yeah. The defendant Anthony Acosta stated: "Thank you for letting me know that, so I could correct that." In a threatening manner.

234.   Check doctors real name in original complaint exhibits. Doctor Lisa Viera, PA ran a test for DVT- deep vein thrombosis-, diabetes, and a blood test for various infections that she knows to cause the same type of swelling in the body. The results were negative. Doctor Lisa Viera, PA, and suspected that the infection was received through a cut. There was a cut in my leg, where the pain was felt. That portion of the leg was and still is discolored and with dead skin partially peeling. Plaintiff contends that the shelter has clients there with several types of illnesses including gangrene. Plaintiff's laptop was broken in the possession of the NAICA security personnel, after being confiscated.

235.   Defendant John Doe violated the New York State and Federal constitutional rights to be secured in my home and effects and fourth amendment right to be free from unlawful and unreasonable seizures of my property and without a warrant, nor justifiable probable cause. As the security guard explained to him it's to protect you, to protect your laptop from being stolen." After explaining that my laptop was used for litigation, it was still confiscated repeatedly. Plaintiff contends that DHS's interest in conspiring to keep him at the NAICA Bronx park location was in part premised upon Criminal negligent homicide. Plaintiff was searched every night while a resident there and every shelter that he attended NAICA park avenue location.

236.   The plaintiffs' laptop was confiscated every night. After the laptop was broken by NAICA Personnel, the plaintiff was forced to buy a new one. Plaintiff was never called back, after speaking with the defendants Montanga and defendant Hyler on January 10,

2020, by NAICA after, or DHS showing their intent. Plaintiff filed a grievance to the last defendant freeze informing her that he was vegan, not able to get a reasonable accommodation to be supplied with a vegan diet at the facility any facility daily. Defendant freeze left the room to check the policy, returned and confirmed during the meeting that the DHS policy [Exhibit____] and according to the nycrr it states that "the facility is supposed to accommodate you according to your diet." 258. DHS Policy [Exhibit____] states: _____ .

237.    On the night of January 9, 2020, I went to the 17th police precinct to file a police report. Defendant Bullups badge No.____took the police report. After going back and forth between the plaintiff explaining to her and defendant Omahoney, the report was completed. 262. The Badge number_____ and defendant Omahoney was the supervisor at the time. Defendant told the plaintiff he would have to come back and ask for the complaint number at a later date. DHS was the plaintiff landlord at the time.

238.    Defendant Montagna and defendant Hyler work for DHS which provides housing to the public that are homeless. They told the plaintiff that you come upstairs many times you're not coming ups stair today as he was trying to file grievances i.e., defendant Acosta and defendant Julius's doe and hospital discharge papers. Defendant Hyler would not allow me to speak to her and stated that plaintiff should go back to the shelter after defendant Montanga told me we're not your case managers and allow defendant Acosta to assess the situation. The two agreed and conspired to deprive the plaintiff of his rights to file grievances and to a fair procedure i.e. to speak to the ombudsman, impartial fair proceeding actionable pursuant to 42 U.S.C. 1983. This violates 42 U.S.C. 1981.

239.    The three defendants mes Montunga acted to advance the affair of the criminal enterprise i.e. you come here enough, go back to the defendant NAICA, you can't come upstairs today, we're not your case managers, failing to perform duties, handing over their duties and responsibilities the perpetrator who interest was to kick out, not allowing him to put his feet up as doctor recommended, deceptive business practice, fraudulent concealment & fraudulent inducement to advance the criminal enterprise. DHS afterward tried to send the plaintiff again back to NAICA after he has complied with catching a foot infection. This violated the fair housing act 42 U.S.C. 3601, 42 U.S.C. 1981 i.e., not being able to submit evidence i.e., grievances, hospital discharge papers and violated plaintiffs NYS ss 11 equal protection of the law and plaintiffs NYS ss 9 right to petition and 1st amendment right to petition the government for a redress of grievances.

240.    Defendant Julius's doe told the plaintiff that he going to call PD short for NYPD. This
was an act of terrorism and violated 490.35 and 135.60 of the criminal procedure laws.
Defendant Acosta told the plaintiff when that bus comes and if you don't get on it then
the police will be called. Plaintiff went to report it to the NYPD 17th precinct. Both Mr.
Anthony Acosta Mr. Julie'z straighten the car police on the plaintiff. The police force and
was used to escort the plaintiff and tell him he could no longer go back there denying the
plaintiff his housing rights. Plaintiff asked defendant Cheung to file a complaint report
against whomever filed a complaint against him for falsely reporting an incident then the
plaintiff was told it wasn't they have a right to do this. Defendant Cheung failed to
remain competent in the law and impartially enforcing the law violating the plaintiff's
14th amendment right to equal protection of the law and his first amendment right to
petition.

241.    Defendants Cheung, Acosta, and Julius deprived the plaintiff of his right to housing at
61-63 Chrystie street and agreed to aid and abetted one another in depriving the plaintiff
first by calling NYPD then NYPD escorting plaintiff, of his right to refuse a transfer. The
three committed patterns individual act to engage in the criminal enterprise of depriving
the plaintiff of his rights and unalienable right life liberty and the pursuit of happiness
violating the declaration of independence, the plaintiff 14 amendment rights deprivation
of life liberty and property. Defendant Mrs. freeze made it clear that the plaintiff had a
right to stay and refuse transfers. Defendant Cheung coerced the plaintiff out of his right
to refuse a transfer. This violated 135.60 of the criminal penal law. 280. This was an act
of intimidation as right after the plaintiff kept asking and he got in the plaintiff's face and
stated, "all right my man". This was an act of terrorism and violates 460.25or 490.25 of
the criminal penal law. Both Mr. Anthony Acosta Mr. Julie'z straighten the car police on
the plaintiff.Yes, officer Cheung got into my face and yelled a derogatory term "alright
my man" against the plaintiff and told him to leave. He falsely argued that the plaintiff
was trespassing. They stood there outside the building while plaintiff was there in the
cold and would not leave until he left and told plaintiff that he could file a police
complaint against Julius doe or mr Anthony Acosta. The seventeenth precinct kicked the
plaintiff out of the precinct after writing the complaints and checking the status of it.

242.    Plaintiff was told in the third phone conversation with defendant Acosta that the a
shuttle bus is coming and if you don't get on that bus then the police will be called.
Defendant julius doe threatens the plaintiff with the police force. Police came and
escorted the plaintiff out of the facility and used the words all right my man a racial
stereotype used to emulate a phrase used by black men when they get angry. This violated
the fair housing act 42 U.S.C. 3601 because the plaintiff was black and disabled. Yes,
plaintiff told him over the phone and informed the staff I gave the staff a copy of my
medical record. Later he told me over the phone how plaintiff must leave the Manhattan
location because we believe it suits you best over here. Defendant Anthony Acosta

misrepresented facts about my work and he falsely told me we think it's better for you over here. 287.

243.    The Bronx neighborhood was predominantly black and Hispanic. The area of interest predominantly white in Manhattan. Plaintiff has a foot infection that spreaded all over his body and was life-threatening that he caught from the environment inside of NAICA Bronx park defendant cut on his leg inside the DHS facility and they tried to send me back to it. plaintiff had a hard time walking my ankles were swollen. Plaintiff didn't have an impairment; plaintiff wasn't convicted of a sex offense. Plaintiff was charged with a sex offense. Plaintiff was disabled legally. Plaintiff had a cellulitis foot infection. Defendant DHS violated the American disabilities act Section 504 states that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under" any program or activity that either receives Federal financial assistance or is conducted by any Executive agency or the United States Postal Service. This violated the fair housing act 42 U.S.C. 3601 and the American disabilities act. 298.

244.    After the plaintiff tells defendant Montagna that he filed a police report last night against one of the shelter members, defendant Acosta And that I was being transferred and I refused it defendant Montagna responds because we're not going to do it it this time.  After the plaintiff's statement about the criminal matter with defendant Montagna states, we use don't. 300. At the plaintiff states he has a right to exercise his right, and he is exercising his right to refuse a transfer defendant Montgna states OK if it's a criminal matter you'll take it in a criminal way feeling to address the issues of the criminality involved in the services, and the plaintiffs right to refuse transfers. You have to plaintiff stating I am also notifying you it's your duty to rectify the situation the defendant Montagna States we don't have any decision making. This violated the plaintiff's right to a fair procedure. After the plaintiff states, he is writing the mayor in regard to this behavior, defendant. Martin stated OK no problem.

245.    After asking defendant Hyler defendant Montagna stated Josh you can't listen to her. The plaintiff already explained to defendant Montagna his leg swollen and gave the paperwork to defendant Nick. Defendant Mrs Montunga interrupted the plaintiff as he was Speaking, and said hello you're listening, you said you refused to transfer from NAICA Bronx Park Avenue when you, when you, come here from. After police escorted the plaintiff from the facility and telling the plaintiff to go back to where his foot was infected defendant Montunga stated they going to put you in a smaller facility associated. After the plaintiff stated it was a conflict of interest to be anywhere with them (i.e. Naica Bronx Park, defendant Acosta) anybody sitting there violating the plaintiffs' rights. Despite not asking a question defendant Montagna rudely interrupted and asked can you

answer the question Josh, are you listening? After the plaintiff asserted "I'm not going to sit here and keep going back-and-forth with you, defendant Montunga the state offensively mr. Kelly.

246.    After defendant Montunga asked the plaintiff what shelter he wants to go to, and he begins to answer a shelter that... She cuts Him off and states no-no-no. After the plaintiff stated again, the plaintiff is requesting to be transferred and defendant Montunga stated we're going to call the shelter now, we're going to call you back ignoring the plaintiff's request again. At the plaintiff states year, I'm downstairs am I going to speak to somebody? Defendant Montagna states we don't have any decision-making, defendant Montagna stated we're going to call you and tell you the decision immediately after the plaintiff asking her the third time requested to be transferred and defendant Montagna good answers "have a nice day" and hangs up the phone. This was not being courteous nor fair and violated the rules. Defendant Montagna practice pattern acts of discrimination and disrespect to participate in advancing the affairs of the criminal enterprise to deprive the plaintiff of anything he wanted and right to be transferred violating 18usc 242.

247.    After explaining to defendant Montagna that it was a conflict of interest to speak with defendant Acosta for falsely reporting the incident and harassing and tampering with a witness, coercion, civil rights violations and civil liberties violations) she states *"can I talk something,"* *"the only thing we going to do today is, one, we're going to send your case to the program administrator in the analog they're going to arrange to meet with you because their supervisor also that we're going to be able to do so."* After the plaintiff stated I got documentation I wanted to submit to you, and you're not allowing me to do that defendant Montana stated: *"we don't take your documentation."* They take the plaintiff's email but not documentation. This violated 42 USC 1981 as the plaintiff's right to submit evidence was violated. This also violated the plaintiff's civil rights i.e., NYS constitution ss 1 "rights privileges and franchises secured," ss9 right to petition the government for a redress of grievances and his civil liberties 14 amendment right *"nor shall any state deprive Andy citizen of life, liberty, or property."*1st amendment right to *"petition the government for a redress of grievances"* violated. Subsequently, this statement violated 42 USC 1964 and 42 usc ss 1983.

248.    This violation of 1964 violated the plaintiff's right to full and equal enjoyment of the law and the plaintiff's unalienable rights *"all men are created equal"* I.e. There were five per people downstairs; plaintiff did not get to submit like everyone else. Plaintiff's have to plan to state his rights and rules were violated in the contract, defendant Acosta answers: *"you speaking a lot of legal jargon, I don't need to know that you could talk to me straight up and you could explain to me you mention a lot about your rights, the DHS*

*rules being violent, just straight up tell me what the problem, what being violated you know?*" That's what plaintiff already did in the grievance and the fact that plaintiff had already stated it and he is asking him to restate it doesn't defeat the fact that he already knows what it was and violated the plaintiffs right to a fair procedure and his 1st amendment right "*to petition the government for redress of grievances.*"

249.    This wasn't the first-time plaintiff was not allowed to submit his documentation to the ombudsman because he was speaking with her instead. Defendant Acosta during the phone conversation stated: "*I don't think you're going to be satisfied, but I'm going to do my best to um Explain these things to you*" objection: what he says, The policy says does not supersede the plaintiff's constitutional rights and is preempted. Defendant Acosta during the phone conversation stated: "*I'm not going to be able to fix a lot of these things because you know you've been already been aggrieved.*" Defendant Acosta during the phone conversation stated: "*The only thing I can do here explains why something is the way that it is, or um say right That should not have happened um And I will change that. Defendant Acosta during the phone conversation stated: At least she will never be able to say well nobody Explain any of this to me.*"

250.    After the plaintiff states that you arranged to have a meeting with the director and I didn't have any say in that, You could have the meeting right here Mrs. Montunga responds "*OK, you're not coming upstairs today.*" This was unsafe, unfair, and undemocratic, it is selective prosecution and a sign of tyranny. Plaintiff has a constitutional right to be heard. Plaintiff 14th amendment right to "*a fair tribunal*" was violated and the "fair procedure" was violated. The plaintiff has no say in the meeting violates his declaration of independence his unalieanable rights to "*liberty*" "*and pursuit of happiness*" was violated and he was deprived of his right to "*liberty,*" and it violated his 14 amendment right to "*nor shall any state deprive any citizen of life liberty and property*" and NYS Constitution ss 1 "*right privileges and franchises secured.*"

251.    Plaintiff's right to a "fair procedure" was violated. The plaintiff wanted to meet with the ombudsman safely instead, the defendants Mrs. Montunga suppressed the plaintiff even though defendant Acosta stated there was nothing he could do. Plaintiff stated he has the right to speak to somebody that you know I'm asking you so I could come upstairs to speak to somebody defendant Montunga stated no-no-no. Plaintiff stated that he's reporting them defendant Montunga stated that he's requesting a transfer. Plaintiff stated you guys are not doing Your job and carrying out your duty's defendant Montunga stated the reason why you're being transferred is that you missed your curfew last night mr Julius said it was code 51 meaning dhs's administrative decision. David Cuban was allowed to go upstairs and was not working nor did he have a late pass. Julius's doe stated "he good." This violated the fair housing act as defendant Montunga stated: "*they were*

*going to put you into a smaller facility*" because the plaintiff was disabled and misrepresented facts to mislead the plaintiff to get him to go to another area. Putting the plaintiff in another are for his disability and because he is black in a white neighborhood violates The fair housing act prohibits discrimination based on race and disability. This violated 42 USC ss 12182 and the American disabilities act.

252.    After telling him defendant Montunga and that plaintiff was transferred first cause he was told by Julius it was code 51 from DHS, then it was an administrative transfer, later on after back and forth Mr. Julius tells  plaintiff because I came in late last night. After telling her about David Cuban another resident coming into the facility with the plaintiff, but he was better, and he wasn't (plaintiff ) defendant Mrs. Montunga asked the plaintiff did you come in late? The question is not whether if the plaintiff came in late the question is whether the plaintiff was discriminated against and treated differently to get plaintiff for lateness and tardiness and not David come down. The question is whether The plaintiff was deprived of service is free from discrimination. The service was unfair. This violated the plaintiffs' rights to fair procedure. This violated 1964 plaintiff was treated unequally because defendant Mrs. Montunga interfered with the plaintiff's civil rights and her denial of his privilege to stay in the facility while another rights to stay in the same facility wasn't violating 18 USC ss 242 and 42 USC ss 12182.

253.    Plaintiff was subjected to pains and deprivation David Cuban wasn't and denied the full and equal benefit of the law ie the Callahan vs. Carey's decision granted homeless men's rights to bedding and to stay in nyc shelters. Defendant Montagna discriminated in public accommodation. Defendant Montagna lies and fraudulently concealed a material fact. This also violated the general business law ss 349 and was fraudulent concealment she suppressed the true condition of the circumstance and truth. 323. Here she violated her contract and duty of care and candor and loyalty bringing harm between the business and plaintiff and the ombudsman to owe the duty to be impartial and she instructed it. She serves two masters herself and wasn't being honest with the plaintiff and violated her actions interrupted defendant loyalty duty to protect my interest. Her action was not in good faith.

254.    Plaintiff was discriminated against for his race class status and disability. This also violated the administrative code title 8 & 42 usc ss 12182 and ss74 of the public officers' law states: f. "*An officer employee of the state agency, member of the legislation or legislative employee should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust.*" Plaintiff the check into Skyway men's shelter on Thursday 9:19 2019 around 1:30 a.m. or 2 am. 326. There were no beds available plaintiff went into the kitchen to sleep normal routine for the plaintiff every night is where he slept in the kitchen before,

he got a bed to sleep in. Defendant Bentley told the plaintiff *"I try to figure something out"*. Plaintiff fell asleep. About an hour passed and the plaintiff woke up from his sleep. Defendant Bentley came to the plaintiff while he was sleeping and told him he has a room for him when he's ready. Plaintiff continues to sleep and when he woke up went to look for defendant Bentley. Plaintiff went into the lobby area to look for defendant Bentley. The defendant Bentley was not there.

255.   Plaintiff went to the operations window and spoke to a female staff member named defendant Rodriguez. 329. According to title 31 chapter 2 of the proposed rules of the DHS "DHS proposes to amend Title 31 of the Rules of the City of New York by adding Chapter 3, which pertains to single adults who return to shelter in the adult services system after an extended absence. Currently, if a single adult shelter client returns to the system within 365 days, the client must return to his or her official shelter (i.e., the shelter where he or she had been previously assigned), where he or she will receive a bed. If a client returns more than 365 days later, the client is sent to a single adult intake center to reapply for shelter, at which point he or she undergoes a new resource assessment and is assigned to a new official shelter. As you can see according to the DHS its own rules plaintiff is entitled to a bet so why is it that defendant Rodriguez feels that the plaintiff is not entitled to one when she stated why does he feel like he's entitled after the plaintiff asked for "what room his bed was in?"

256.   Plaintiff contends that defendant Rodriguez violated his right to be secure in his person and his home. Defendant Rodriguez discriminated against the plaintiff by slamming the plexiglass at the plaintiff and yelling and cursing at him repeatedly stating *"why does he feel like he's entitled."* The place is asked to speak to defendant Jackson who gave him a bed. Defendant Jackson worked for safe security and wore a white shirt within the facility and failed to give me his name upon request. Defendant Jackson answered the plaintiff he doesn't know what his supervisor's name is. Defendant Jackson told the plaintiff, *"I don't need to know his name I shouldn't have been sleeping"*. Defendant Jackson told the plaintiff *"don't do that and we're not going through this"* after the plaintiff asking for his name and his supervisor's name. Defendant Jackson *had his hand in his pocket in a threatening manner ready to pull out whatever weapon he had in there to assault the plaintiff as you got closer in the plaintiff's face.* Violating the plaintiff's 4th amendment right *"to be secure within his person."* This constituted a battery for it was offensive to the plaintiff's *"personal dignity."* This constitutes a violation of the criminal penal law cpl 490.20 and 490.25, 460.20 coercing the civilian population making terroristic threat intimidation, threats, engaging in criminal activities to carry out the affairs of the criminal enterprise.

257.    Defendant Rodriguez cursed at the plaintiff. Defendant Rodriguez would not provide the plaintiff the name of her supervisor after the plaintiff asked her for his name. Plaintiff tried to explain to Defendant Rodriguez that it was public information. Both Defendants Jackson and Rodriguez yelled at the plaintiff at the same time. This violated 490.20 115.00 terroristic threats to deprive the plaintiff of his right to bedding, aiding and abetting, one another to carry out the felonious act participating in the patterned criminal activity to carry out the affairs of the criminal enterprise. This was fraudulent concealment. Plaintiff asked defendant Rodriguez if she could call defendant Bentley, she stated her phone was dead. Defendant Bentley was sitting in the assistant manager's room the whole time while the security guard and defendant Rodriguez misconducted themselves in the hallway attacking the plaintiff. Defendant Rodriguez stated "*I don't know why you think you are entitled to a bed.*" Defendant Rodriguez stated "*I don't give a fuck.*" This was an act of terrorism discrimination and violated the criminal penal law cpl 490.20 and 490.25 and 24 CFR ss she coerced the civillian population and made intimidating threats.

258.    Defendant Rodriguez asks the security guard to move the plaintiff out of there. ( Lobby area in front of the plexiglass) Defendant Rodriguez slammed the little window door plexiglass in the places face after the plaintiff asked for the bed number multiple times and she insisted to tell the plaintiff my supervisor is on break and that he will be back at 6. The time the plaintiff checked in at his assigned shelter was 3:55 am. 6 a.m. is the next day and shelter residents will have to leave out without a bed pass within the hour 7 am. was her supervisor who was in the other room sleeping as he told the plaintiff when he finally emerges. Mrs. Rodriguez lied to the plaintiff stating that defendant "*Mr. Bentley is on his lunch break and he's not here.*" Plaintiff Contends that the case law Callahan v. Carey decision grants homeless men the right to bedding in New York City shelters. Mrs Rodriguez violated the case law and denied plaintiff his right to shelter. This was fraudulent concealment wishes concealed the whereabouts of Mr. Bentley and she lied and stated he was not there he left.

259.    The Defendant Rodriguez States, I don't know whom he thinks he is and what he's entitled to. defendant Rodriguez slammed the plexiglass and said "*get the fuck out of here.*" After defendant Bentley appeared from his sleep he told the plaintiff "*I'll find you*" (meaning that he gave the bed away to somebody after he came to the plaintiff while the plaintiff was sleeping) Afterward, the plaintiff stated you came to me at the table defendant Bentley cuts the plaintiff off and stated: "*yeah, that was hours ago*". The Defendant Rodriguez States get the fuck out of here for a second time right in front of defendant Bentley. Defendant Jackson and Defendant Rodriguez stated yep "*they're going to get you out of here so we going to see you no more.*" This is a threat coming from the security guard and is intimidation and a part of a series of conduct that alarmed and annoyed and intimidated the plaintiff after he got into the plaintiff's face. This constitutes harassment in the second-degree and a crime of terroristic threats, a crime of

terrorism and enterprise corruption ie coercion the civillian poiolation, engaging in criminal activities to advance the affairs of the criminal enterprise, a violation of the criminal penal law CPL to 240.26 490.20, 490.25, 460.20(2)&(1)(c ).

260.   Next, defendant Jackson stated to the plaintiff we're not going to see you here anymore then defendant Rodriguez begins laughing. Defendant Rodriguez called defendant Jackson Howard. This leaves the plaintiff to believe that defendant Jackson's real name is Howard from safe security. A plaintiff requested the identification of the other gray shirt guard that works for safe security and he did not give it to the plaintiff. Nor was his name tag available for the plaintiff to see. Defendant Rodriguez told the plaintiff that the guards told her that plaintiff was not allowed in the office where defendant Bentley was. Plaintiff asked the guard to knock on the door to see if Mr. Bentley was there the guard refused to knock on the door like how he refused to give me his name. Later after-action defendant Bentley what the guard's name was, the defendant Bentley told the plaintiff the guard's name was Mac Clinton. Plaintiff asked defendant Bentley what he is going to do about defendant Rodriguez's misconduct, defendant Bentley told the plaintiff not to worry about it I'll take care of it. Plaintiff asked defendant Bentley for a grievance form please and defendant Bentley told the plaintiff I'll get one right now. Mr Bentley never got the grievance form for the plaintiff and was asked again for it told the plaintiff he can't find it he'll print one from the computer. The defendant Bentley told plaintiff he would give him a grievance form in a few hours he'll print it from the computer. Plaintiff never received the form from defendant Mr. Bentley he stated *"we don't have any more forms left"* before his shift ended and he left.this violated plaintiff's 1st amendment and NYS constitution ss 9 right to petition the government for a redress of grievances and was a deprivation of plaintiff's right to file grievance and violated 18 usc ss 242.

261.   Later defendant Bentley told the plaintiff he doesn't know who defendant Jackson or Howard's Supervisor was. Defendant Bentley told the plaintiff he doesn't know what room defendant Howard or defendant Jackson's supervisor in. Defendant Bentley is was the head guy in charge. Plaintiff asked defendant Bentley if defendant Jackson's supervisor was there, and defendant Bentley said no. It is at this point the plaintiff noticed that defendant Jackson lied about his status as being the supervisor of the security guards, not just him but just defendant Rodriguez as well. After the plaintiff asked defendant Rodriguez for a grievance form, she told the plaintiff you're dealing with him, not me. This is before defendant Bentley came out of the room. The plaintiff asked defendant Rodriguez multiple times for a grievance form before she finally answered, and she Shrugged her shoulders then stated she doesn't care and told the plaintiff to put that in the grievance as well.

262.    After one of the multiple times the plaintiff asked defendant his name he snapped and asked the plaintiff what's his name. After the plaintiff came back and knocked on the door for a grievance from the defendant Bentley responded I told you I'll give it to you in the morning. Even though he explained to the plaintiff that he will give it to him in the morning. After telling the plaintiff that he would give him a grievance form in a minute, defendant Bentley instead silently went off into the other room and stated that he'll give it to the plaintiff at 6 a.m.

263.    Defendant Bentley claimed he had to go into his email and that he's on his break and tells the plaintiff don't give me a hard time I look out for you I gave you a bed. Threatening the plaintiff as if the bed he's entitled to be exchangeable for a grievance form) defendant Bentley told the plaintiff to have a good night sir, I'm not going back and forth with you. Next, he told the plaintiff all right thank you, and closed the door in the plaintiff's face. After the plaintiff knocked on the door again and asked for the name of the security card underneath Jackson or Howard and defendant Bentley said the car's name has missed the Clinton. 24 CFR ss 576.403 shelter and housing standards (b) the shelter did not provide the minimum safety standards of the local government by not complying with the NYC administrative code chapter 2 ss 27-2001 (1)(2)(3). this violated ss 576.403(B). which requires shelters to comply with the minimum local government safety standards.

264.    The NAICA DHS shelter failed to comply with the minimum sanitation standards of the local government when they violated the administrative code 27-2001(3) by failing to act responsibly to preserve the multiple dwelling unit that affected my health and safety. Skyway men's shelter failed to provide minimum privacy standards on the day of the Callahan inspection its staff subcontractor of the cleaning crew busted into the bathroom on the plaintiff and violated the plaintiff's privacy and entered the bathroom as the plaintiff was but naked. Thus, violated the plaintiff's right to be secure in his person. This violated 24 CFR ss 576.403 (b).

265.    Plaintiff has standards of his own he does not like roaches and is vegan he wasn't provided a sanitized facility pest or Vernon free, at skyway men's facility nor vegan meals. Likewise, the plaintiff was subjected to puddles of shower water on the shower floor both outside and inside the bathroom at Naica Bronx park It contained other clothing still left in the bathroom. Tissue was on the floor and only had one janitor working at times, and according to the janitor they didn't want to hire anybody else. This violated ss 576.403 (b). The Naica building was not structurally sound to protect me from health and safety risks when I caught the cellulitis foot infection from its facility. This violated the ss 24 CFR 576.403 (b)(1).

266.   Plaintiff's right to access the shelter under the fair housing act and Callahan and Callahan v Carey decree were violated. Thus, this violated 24 CFR ss 576.403(b)(1). Defendant Julius's doe and Defendant Accosta violated the plaintiff's right to shelter and fair shelter by first threatening the plaintiff to call the police if he doesn't return to the NAICA facility where he caught the foot infection. Not complying with and violating the fair housing act 42 USC 3601 violated 24 576.403(2) and the Americans with disabilities act and 42 USC ss 12182. the DHS facility failed to accommodate the plaintiff according to his life-threatening foot infection. Plaintiff was not provided adequate space for my belongings by the skyway men's shelter when I was denied bedding for the night and forced to sleep on the kitchen chair. This was discrimination and violated the Administrative code title 8-101 as to defendant Rodriguez as "*why does he feel like he is entitled*" discriminating against the plaintiff with hate speech and manifesting hate in her actions and conduct.

267.   Plaintiff was not provided an acceptable place to sleep just as equally when he was told by defendant Acosta that we think is better over here for you. Referencing that plaintiff be transported back to the same NAICA facility he caught the foot infection. This violated the plaintiff's 24 CFR ss 574.403. that night at skyway men's shelter plaintiff was not provided adequate space for himself nor his belongings. When security got into the plaintiff's face and his name was not provided, he was not provided adequate security for the night for himself. This violated the plaintiff's 24 CFR ss 574.403.

**I, Joshua Kellier, is bringing this action against HRA seeking monetary relief and equitable remedy for punitive damages, consequential damages, expectation damages, aggravated damages, and compensatory damages, special damages, general damages, nominal damages, and liquidated damages for breach of oral contract, breach of duty, willful misconduct, discrimination, and negligence.**

268.   **Plaintiff is seeking monetary relief for compensatory damages, punitive damages, restitution, special performance, award of damages and relief in arrest and apprehension of trespassers for discriminating and violating the law against and depriving plaintiffs' rights!**

269.   **Plaintiffs seek damages in the amount of $ 25 million.**

270.    Plaintiff demands to be compensated for compensatory damages, punitive damages, special damages, Incidental damages, Consequential damages, Liquidated damages, future damages, incidental damages, and demand equitable relief in the amount of 4 million dollars, inconvenience and emotional distress for the harassment discrimination and landlord harassment, Changing the locks while a tenant is away, deactivating of card for the purpose of harassment or eviction. Performing unnecessary inspections, too often or at extremely inconvenient times when the plaintiff was in the middle of doing something, lying or intimidating a tenant, Giving a "21-day notice" eviction notice that is based on false charges, Using threatens to make the tenant feel uncomfortable, Interfering with a tenant's right to privacy, forging a new fraudulent contract when the tenant asked for a copy of the original contract with tenants electronic signature, negatively affect a renter's experience living on your property, failure to give the plaintiff a copy of the rules upon request, breach of contract, changing rule without notice, creating situations to make the tenant feel uncomfortable, being forced to carry his stuff on the street with his because the facility denied him access.

271.    Plaintiff would like for the court to subpoena the conference decisions and nature to discussion defendant HRA negligence. In year 2019 and 2018 plaintiff reported that 311 complaints were filed and DSS complaints and to the mayor against the supervisor and security. Plaintiff would like to subpoena all of these records.

272.    Plaintiff seeks $25,000,000 in money damages.

Date: _____        Signature:_____

        Joshua Kellier